**Michael Edwin SMITH,**
**Plaintiff-Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services,**
**Defendant-Appellee.**

**No. 83–1908.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1983.

Decided May 31, 1984.

Robert G. Ulrich, U.S. Atty., F.O. Griffin, Jr., Asst. U.S. Atty., W.D. Mo., Kansas City, Mo., for defendant-appellee; Paul P. Cacioppo, Regional Atty., D. Samuel Borin, Asst. Regional Atty., Department of Health and Human Services, Kansas City, Mo., of counsel.

James Marshall Smith, Legal Aid of Western Mo., Kansas City, Mo., for plaintiff-appellant.

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Michael Edwin Smith was denied Social Security disability benefits because the administrative law judge concluded that Smith's mental retardation, coupled with eye problems, ulcers, and back strain, did not constitute a "severe" impairment and that consequently Smith was not disabled under 42 U.S.C. §§ 423 & 1382c (1976 & Supp. V 1981). The Appeals Council denied review of the ALJ's decision, thus making it the final decision of the Secretary, and the district court affirmed. Smith appeals, arguing that the ALJ misconstrued and misapplied the Social Security Act in failing to consider vocational factors such as age, education and work experience; that the ALJ accorded undue weight to the report of the consulting physician; and that the ALJ did not accord proper weight to lay evidence concerning Smith's work limitations stemming from retardation. We reverse the judgment of the district court and direct it to order the Secretary to commence payment of disability benefits.

Smith is mentally retarded, his condition having been diagnosed shortly after birth. A psychologist examining Smith at age eight measured his IQ to be 69, indicating moderate intellectual retardation. In the psychologist's opinion, Smith had the potential for "future development into a self-sufficient and self-supporting adult." In 1970, at age twenty-one, Smith was examined at

the Department of Psychiatry, University of Kansas Medical Center, because he had not been able to keep a job for more than three to four months. The medical report stated that he "seems to resent any placement," and he "resents being considered slow." The report further stated that he suffered from bad temper, had a generally flat affect, was mildly mentally retarded, could not subtract simple numbers or make change in his head, and had mildly impaired insight and judgment.

In 1980 Smith underwent psychological testing that indicated that he had, as measured on the Wechsler Adult Intelligence Scale (WAIS), a verbal IQ of 67, a performance IQ of 81, and a full scale IQ of 71. The ALJ found that the full scale IQ score placed him in the borderline range of intelligence. The Secretary's consulting psychiatrist, Dr. Carleton J. Lindgren, who examined Smith on September 29, 1980, diagnosed hypochondriasis (or hypochondriacal neurosis), a passive-aggressive personality and mild mental retardation.

Evidence showed that Smith had back problems stemming from a work accident and a minor automobile accident. He testified that he had been involved in an automobile collision in 1969 as well, and that he had required some 156 stitches to his face and suffered bruised ribs. He stated that he had frequent headaches since that time. He had ulcers, shortness of breath and dizziness, and became lightheaded and shaky when he overexerted himself. He had had eye surgery.

Smith testified at the hearing that he had held numerous jobs. He had worked at Walker Food Products packing various food items, but was fired because he was not able to do some of the work they wanted him to do and could not keep pace with the others. He stated that he had difficulty understanding his job duties at Walker Foods and that he could not remember all that he was told to do. He had worked at the Advanced Sailboat Company masking boats for painting but was fired after one day because "I just wasn't smart enough I guess to know what I was doing with the boats." He worked at several restaurants but could not remember the names of all of them. He was fired from a job at the Purple Pickle because he wanted to go home due to illness. He left a job at the Tacoma Restaurant because his boss "always came in drunk and took his spite out" on him. He had a job with the Housing Authority of Independence, Missouri, but lost it after approximately ten months. Although they tried to teach him, he could not learn to be a plumber. He worked at Artex Industries, but was fired because he fought with co-workers who were "hassling" him. He worked in the warehouse at Wild Woody's Bargain Store but was fired after running a forklift into some furniture; he did not know how to work the gears. He was fired from a garbage collection company because a supervisor thought he had been drinking; Smith stated that he had not been drinking, but had fallen on a chair and hit his head.

Smith testified that he was unable to pass a written test for military service, had failed the written portion of a driver's examination seventeen times and had occasionally gotten lost because he was unable to understand road signs. He was unable to understand the bus system and could not make bus connections unless someone helped him. He was unable to make change. He could read some but not the "hard stuff". He stated that he could not work like a lot of other men and that he had trouble following instructions and understanding his past jobs and job responsibilities.

Smith's aunt, who had been a supervisor at Wild Woody's, testified that he was not allowed near machinery when it was operating and that he needed constant supervision while he was on the job. He would have to have things explained four or five times "or you'd have to stay right with him to get it done." She testified that a lot of times right in the middle of it, he would forget what he was doing. He had no common sense and could not remember things that he had been told. She had helped him with numerous jobs and with

transportation. She confirmed Smith's testimony that he could not ride the bus because he was so confused.

Smith's mother testified, describing his difficulties with simple tasks such as mowing the lawn. She stated that he simply could not be given a job and be left alone, but would require constant supervision. When he was sent to the store to get something, he seldom returned with it and sometimes came back with something entirely different. He did not seem to be able to grasp anything even when instructed repeatedly.

Three affidavits were placed in the record, one from a supervisor at Walker Food Products and two from Smith's supervisors at Wild Woody's. The affidavits stated that Smith required constant supervision, had to be told repeatedly how to do his job, had to be double-checked and was unable to do paper work. All opined that he was mentally unable to work because of his "learning disability."

In his evaluation of the evidence, the ALJ remarked:

> The evidence of record establishes that this 32 year-old claimant does have a mental retardation problem which although having exerted some disruptive influence on his activities from time-to-time has not been so severe as to have precluded substantial gainful activity for a continuous period for at least twelve months.

The ALJ concluded that Smith was not disabled, finding as follows:

5. That the medical evidence establishes that the claimant suffers from eye problems, ulcers, back strain and mental retardation, but his medical condition does not significantly limit his ability to perform basic work-related functions.

6. That therefore pursuant to Regulation 404.1521 and 416.921 and the above finding, the claimant's medical condition is not severe, as it does not significantly limit his ability to perform basic work-related functions.

■ The findings of fact of the ALJ are conclusive if supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g) (Supp. V 1981); *Nettles v. Schweiker,* 714 F.2d 833, 835 (8th Cir.1983). Review under this standard is more than a rubber stamp for the Secretary's decision or a search for the existence of evidence supporting the finding. *McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983); *Brand v. Secretary,* 623 F.2d 523, 527 (8th Cir.1980). As Justice Frankfurter pointed out in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See Smith v. Schweiker,* 728 F.2d 1158, 1161 (8th Cir.1984); *Brand,* 623 F.2d at 527.

■ Smith initially argues that the "sequential" evaluation process employed by the Secretary in making disability determinations too narrowly construes the Social Security Act because it permits a finding of no disability without regard to vocational factors such as age, education, and work experience.[1] We need not address this con-

---

1. The "sequential" evaluation process is set forth at 20 C.F.R. §§ 404.1520 and 416.920. If at any step in the process an individual is found to be disabled or not disabled, the evaluation proceeds no further. The ALJ made his determination that Smith was not disabled based on the second step of the process, *i.e.,* finding that Smith's impairment did not significantly limit his ability to do basic work activities and hence was not "severe". The steps are as follows:

First, if the Secretary determines that an individual is working and the work is substantial gainful activity, then the individual is found not disabled regardless of medical condition, age, education, or work experience.

Second, if the Secretary determines that an individual does not have a "severe" impairment, *i.e.,* one that significantly limits one's physical or mental ability to do basic work activities, then the individual is found not disabled, regardless of age, education, or work experience.

Third, if the individual has a "severe" impairment of the required duration and is on the Listing of Impairments, then the individual is found to be disabled, regardless of age, education, or work experience.

tention, however, because we conclude that the ALJ's findings were unsupported by substantial evidence even under the "sequential" evaluation process. To the contrary, substantial evidence overwhelmingly demonstrates that Smith is disabled.

On reviewing the entire record, we reach the inescapable conclusion that the ALJ failed to accord proper weight to uncontradicted lay evidence from Smith's family and supervisors concerning his limited ability to perform basic work activities. Instead, the ALJ appears to have reached his decision almost exclusively on the strength of the report of the Secretary's consulting physician. For example, the ALJ drew upon the consulting physician's report in dismissing Smith's physical complaints: "[T]he expert medical evidence tending to show that the claimant has residual physical strength to work on a sustaining basis is entitled to more credibility than the [claimant's subjective testimony] showing otherwise." The ALJ further relied upon the report in minimizing the effect of Smith's mental retardation, opining that Smith's problem was "largely motivational in nature." Dr. Lindgren had commented that "he probably will not return to work as long as he is supported by his family or by unemployment compensation."

We seriously question the validity of a consulting physician's opinion as to a claimant's motivation when the physician has not observed the claimant at work or in daily activities. See *Vasquez v. Schweiker*, 701 F.2d 733, 736 (8th Cir.1983) ("The credibility of a medical opinion is particularly suspect when it is based on incomplete evidence."). Furthermore, we have held that the report of a consulting physician who examines the claimant once does not constitute substantial evidence, especially if contradicted by the evaluation of the claimant's treating physician. *Ledoux v.*

*Schweiker*, 732 F.2d 1385, 1388 (8th Cir. 1984); *Hancock v. Secretary*, 603 F.2d 739, 740 (8th Cir.1979); *see also McGhee v. Harris*, 683 F.2d 256, 259 (8th Cir.1982). In Social Security Ruling 83–15, even the Secretary cautioned that "[a] single current examination may not always properly describe an individual's sustained ability to function. It should be viewed as one point in time in the longitudinal picture of an individual impairment." Smith's treating physician, who saw him regularly for a period of twenty-one years, stated that "basically he is unemployable and uneducable." The ALJ gave this evaluation short shrift, saying that "it is not unusual for a physician to make such a statement when reporting on behalf of a private patient." The ALJ stated that because the conclusion was upon the ultimate issue to be decided it was not determinative and was to be weighed with respect to its consistency with other evidence as to the severity and probable duration of the individual's impairment. The ALJ failed, however, to take into account significant lay evidence supporting the treating physician's assessment.

Here overwhelming lay evidence demonstrated Smith's inability to understand or remember instructions, use judgment, learn new skills, perform simple calculations, or read. Smith's need for constant supervision was clearly borne out by every lay witness. Yet, the ALJ in setting forth the evidence made only passing reference to the testimony of the aunt, who supervised him at Wild Woody's, and only slightly greater mention of the mother's testimony. In evaluating the evidence, the ALJ made no findings concerning their testimony. In addition, the ALJ was completely silent about the three affidavits filed by witnesses who observed Smith at work and who corroborated testimony that he was

Fourth, if the individual has a "severe" but unlisted impairment, and if the Secretary determines that he or she has the residual functional capacity to return to kinds of work done in the past, the individual is found not disabled.

Fifth, if the individual cannot return to work he or she performed in the past but retains the residual functional capacity to do other kinds of work, in light of the person's age, education and past work experience, the individual is found not disabled. If not, then he or she is found disabled.

unable to work without constant supervision. The fact that the ALJ failed to mention these affidavits suggests that he may have overlooked them. *See Davis v. Califano,* 605 F.2d 1067, 1072 (8th Cir.1979).

■ We have frequently criticized the failure of the Secretary to consider subjective testimony of the family and others. We have held that a failure to make credibility determinations concerning such evidence requires a reversal and remand. *Basinger v. Heckler,* 725 F.2d 1166, 1169–70 (8th Cir.1984); *see also Simonson v. Schweiker,* 699 F.2d 426, 429 (8th Cir.1983) (failure to consider subjective testimony about pain). If the ALJ is to reject such testimony, it must be specifically discussed and credibility determinations expressed. Because the ALJ failed to consider this evidence properly, his decision, and those of the Appeals Council and of the district court that were based upon it, must be reversed.

The significance in failing to consider this testimony is made manifest by reference to the regulations upon which the ALJ's decision was based, 20 C.F.R. §§ 404.1521 & 416.921, which are worded in essentially identical language and which come into play at the second step of the sequential evaluation process. Both provide that an impairment is not severe if it does not significantly limit physical or mental abilities to do basic work activities. Basic work activities include the following:

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 416.921(b) and 404.1521(b). Assuming that these regulations comport with the statute, we conclude that the ALJ's decision patently defies them. The testimony not considered plainly established that Smith was unable to perform these specific activities and that his impairment was therefore severe.

■ Having summarily and erroneously concluded that Smith did not have a severe impairment, the ALJ further failed to evaluate Smith's impairment under the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 (1983). *See Brenner v. Schweiker,* 711 F.2d 96, 99 n. 3 (8th Cir. 1983). Under the third step of the sequential evaluation process, if a severe impairment is of the degree set forth under the Listing, the claimant is found disabled regardless of age, education, or work experience. Section 12.00 B 4 describes factors to weigh in determining whether the degree of mental retardation can be considered disabling. It specifically prescribes consideration of the WAIS and points out that IQ's of 69 and below are characteristic of approximately the lowest two percent of the general population. Smith's verbal IQ of 67 places him in this group.[2] Section 12.00 B 4 makes plain that actual observation by "other reliable, objective sources should be considered as additional evidence." [3] Lay testimony in Smith's case

---

2. Where more than one IQ is customarily derived from the test administered, *i.e.,* where Verbal, Performance, and Full Scale IQ's are provided as on the WAIS, the lowest of these is to be used in conjunction with § 12.05. 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00 B 4. *See also* S.S.R. 82–54.

3. Social Security rulings also stress the importance of evidence as to a claimant's everyday activities in determining the severity of impairment posed by mental retardation. S.S.R. 82–54 provides that such an impairment may be considered severe if manifested by "inability to understand the spoken word," "inability to follow simple directions," and "inability ... to perform simple calculations." S.S.R. 83–15, effective August 20, 1980, discusses the usefulness of lay evidence concerning daily activity and work attempts:

*Usefulness of Lay Evidence*

Third party non-medical information may be useful in obtaining a better description of the individual's daily activities, interests, and interpersonal relationships... One should also consider information provided by others, including family members, who have had close contact with the individual and have knowledge of his or her living conditions.

**318**

clearly demonstrated several criteria of mental retardation listed in Section 12.05 A: "[I]nability to follow simple directions and inability to read, write, and perform simple calculations." Indeed, Section 12.05 C *requires* a finding of disability due to mental retardation if a claimant has an "IQ of 60 to 69 inclusive ... and a physical or other mental impairment imposing additional and significant work-related limitation of function." The ALJ should have considered whether Smith's physical or other mental impairments posed such an additional limitation, which would have led to an automatic finding of disability.

■ The ALJ's error in failing to find Smith's impairment to be severe, and the consequent failure to evaluate his impairment according to the Listing of Impairments, would at least necessitate a remand for redetermination of Smith's claim. "Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate." *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). We believe that the record in this case has been fully developed and that substantial evidence supports Smith's claim.

■ Even if Smith's other impairments were found not to impose significant limitations, thereby precluding an automatic finding of disability, the ALJ would still have to proceed to the fourth and fifth steps of the sequential analysis: determining whether Smith had residual functional capacity to return to past work and if not, whether he could do other kinds of work. Smith's history of work attempts is closely analogous to the claimant's work history in *Tennant v. Schweiker*, *supra*. Tennant held 46 jobs in twelve years, his longest tenure was six months, and he was fired from most of these jobs. Tennant desired both training and gainful employment but met with little success in either. Under these circumstances, we held that his personality disorder rendered him unable to engage in substantial gainful employment and required a finding of disability. Likewise, we conclude that Smith's history of work attempts not only raises serious doubt about the ALJ's "motivation" assessment, *see Brinker v. Weinberger*, 522 F.2d 13, 19 (8th Cir.1975), but also substantiates the testimony that Smith simply lacks the basic mental ability to follow directions without constant supervision.

■ The failure to consider this evidence is significant in light of the testimony of the vocational expert. She testified that Smith had transferable skills as a restaurant worker, counter worker and busboy, but that *no* jobs were available for an individual who required constant supervision. This was precisely the point of the uncontradicted lay testimony and evidence of work attempts overlooked by the ALJ. Thus, the evidence viewed in the entirety showed that Smith lacked the residual functional capacity to return to his past work. Such a showing shifts the burden to the government to prove that other jobs exist. *Simonson v. Schweiker*, 699 F.2d at 428. Here there was uncontradicted evidence that Smith's need for constant supervision rendered him unable to perform *any* substantial gainful activity. Because the government failed to meet its burden, it cannot prevail.

The testimony on the need for constant supervision is not unlike the testimony in many cases before us dealing with subjective complaints of pain. While the ALJ may disbelieve a claimant's subjective com-

*Significance of Daily Activities Including Work Attempts*

> Some individuals may have attempted to work, or may actually have worked, during a period of time pertinent to the current determination of disability. This may have been an independent attempt at work or may have been in connection with a community health or other sheltered program. These work efforts will typically have been of short duration. The information concerning the individual's behavior during the attempt at work and the circumstances surrounding the termination of the work effort may be particularly informative as to the individual's ability or inability to function in a work setting.

plaints of pain because of inherent inconsistencies or other circumstances, the ALJ is not free to reject such complaints solely on the basis of personal observations made during the hearing. *See Reinhart v. Secretary,* 733 F.2d 571, 573 (8th Cir.1984). Here the evidence concerning constant supervision came from Smith's family and employment supervisors; moreover, it was nowhere contradicted and was supported by objective psychiatric data.

When we consider the determinations of the ALJ, as affirmed by the Appeals Council and the district court, we must conclude that these findings are not supported by substantial evidence on the record as a whole. Indeed, because we are satisfied that substantial evidence on the record as a whole demonstrates that Smith is disabled and that he is entitled to disability benefits from November 25, 1979, we need not remand the case to the ALJ for further proceedings. *See Baugus v. Secretary,* 717 F.2d 443, 448 (8th Cir.1983). The district court is directed to enter judgment to this effect.