**Doug SIMMS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 84–1211–CV–W–9.**

United States District Court,
W.D. Missouri, W.D.
June 7, 1985.

Larry O. Denny, Kansas City, Mo., for plaintiff.

Edward H. Funston, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

Plaintiff seeks review of the final decision of the Secretary of Health and Human Services (Secretary) denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383c. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Secretary under both Titles II and XVI.

On May 2, 1983, plaintiff, Doug Simms, filed a claim for disability insurance benefits and for SSI benefits. The Secretary made an initial determination and denied benefits on June 16, 1983. The Secretary denied plaintiff's request for reconsideration on July 13, 1983. On April 19, 1984, a hearing was held before an Administrative Law Judge (ALJ). On June 11, 1984, the ALJ found that plaintiff was not under a disability as defined in the Act. On November 16, 1984, the Appeals Council denied review of the ALJ's decision; thus, the decision of the ALJ stands as the final decision of the Secretary.

This action is before the Court on cross-motions for summary judgment. Upon consideration of the briefs in support and in opposition, and for the reasons stated below, plaintiff's motion for summary judgment will be granted.

The standard for judicial review by this Court is whether the decision of the Secretary was supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Hancock v. Secretary of Dep't. of H.E.W.*, 603 F.2d 739, 740 (8th Cir.1979). The determination of whether the Secretary's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Secretary's decision.

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983).

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Once this is established the burden shifts to the Secretary to prove that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir. 1983).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled or not. The regulations referred to generally as Medical-Vocational Guidelines are codified in 20 C.F.R. §§ 404.1501, *et seq.* (1983), and in 20 C.F.R. §§ 416.901, *et seq.* (1983). The Eighth Circuit Court of Appeals summarized this evaluation process in *McCoy v. Schweiker*, 683 F.2d 1138, 1141–42 (8th Cir.1982) (en banc).

In an attempt to create an orderly and uniform framework for analysis and decision of disability claims, the Guidelines set out a fixed sequence of decision-making that Administrative Law Judges (ALJs) are required to follow. First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can

still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALJ's findings as to RFC, age, education and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table. . . .

The ALJ found that plaintiff suffered from the impairment of a borderline personality disorder but that it was not a severe impairment and, therefore, plaintiff was not disabled.

By making this finding in the initial stage of the *McCoy* analysis, the ALJ did not determine whether plaintiff could perform his past relevant work, did not evaluate plaintiff's residual functional capacity, and did not determine the effect of his nonexertional impairments on his ability to perform jobs that exist in the national economy.

 A severe impairment is an impairment that significantly limits the ability to perform basic work-related functions. *McCoy*, 683 F.2d at 1142. The ALJ's determination that plaintiff does not suffer from a severe impairment is not supported by substantial evidence.

Plaintiff testified that each attempt at employment had been unsuccessful be-cause he was too slow, he lacked concentration, he was not able to remember simple instructions, and he is hyperactive. For instance, plaintiff's most recent employment was at Sexton Metal where he was supposed to sand a specific number of wooden shells by hand each hour. Plaintiff was too slow and could not concentrate on his job. It took plaintiff twelve to fifteen minutes to do what other workers were accomplishing in four to five minutes. Plaintiff was employed at this job for ten days. In 1981, plaintiff worked at Stafos Farms where he packaged produce on an assembly line. Plaintiff was too slow and worked at this job for twelve days. In 1979, plaintiff worked at A. Reich Produce where he packaged orders. Plaintiff was too slow and could not remember what he was supposed to be placing in each order. Plaintiff was also supposed to load cartons of produce from a conveyor belt to trucks.

Loading them, but I had trouble doing that because I had trouble judging, you know, be able to judge what size box fit in what space real fast because along, you know, they were feeding it to you fast and you had to take them off fast like different size boxes. I'd have trouble putting those, in other words, you know, judging which box fit in what space so the load would be even, you know.

I was slow there. I'd, you know, I'd be thinking, trying to decide as a box was coming to me which—where to put it, you know. Then the boxes would pile up on me and some of them might fall on the floor.

Tr. 46.[1] Plaintiff worked at this job for fourteen days. Prior to that plaintiff

---

**1.** The transcript of plaintiff's testimony does not appear to be reliable. For instance, the term biofeedback is recorded as "vital feedback." There are numerous examples which common sense suggest have not been accurately transcribed. For instance, plaintiff's counsel supposedly asked this question: "Mr. Bougadis, did you ever assist Mr. Simms in paying [obtaining] any employment in any kind of produce company?" Tr. 71. The ALJ supposedly asked this question: "You had an variation, significant amount, in the last year?" Tr. 37. The ALJ

supposedly asked this question: "You previously told me that when you were born that you had some surgery right after you worked?" Tr. 37. Plaintiff supposedly testified as follows: "If I hadn't been—had to have this information [incision] I would have been (inaudible) [retarded]." Tr. 38. When asked about his problems with hyperactivity at the age of fourteen, plaintiff supposedly testified as follows: "Well, it was—hard for me to be calm or sit—still for very long. You finally have to start weaving [mov-

worked at Corn Products from November, 1976, to August, 1977. Plaintiff testified that he was too slow at this job also. Prior to that plaintiff worked as a gas attendant at a Mobil gas station. Plaintiff was unable to do this job because he was hyperactive, tended to talk too fast, and was unable to communicate with the customers.

Plaintiff further testified that he took prescription medication during March (presumably of 1983) to calm his nerves and reduce the hyperactivity. The medication was prescribed by Dr. Vera at the Western Missouri Mental Health Center. Plaintiff is now participating in a biofeedback program to calm his nerves and to teach him to deal with his hyperactivity. Plaintiff attends these sessions twice a week for approximately an hour.

Plaintiff also testified that he hears voices which affects his ability to concentrate. There are two types of voices. One type is a positive voice which calms and soothes him. The other type is a negative voice which tends to excite him. The voices battle each other. Tr. 57–58.

The ALJ did not make any credibility findings, or in any other way reject plaintiff's testimony.

Plaintiff's friend, Anton Bougadis, testified that he had known plaintiff for approximately eight years. Plaintiff has occasionally worked for him. Bougadis testified that plaintiff's mind wanders and he cannot remember simple instructions. For instance, Bougadis would send plaintiff on an errand to the store to pick up a few items. Plaintiff would return three to four hours later without the items he was sent to get. Bougadis testified that in a conversation with plaintiff, plaintiff would drift off and start talking about something else.

"The subjective testimony of the claimant, his family, and others must be considered by [the Secretary] even if it is uncorroborated by objective medical evidence." *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir.1984). "If the [Secretary] is to reject such testimony, it must be specifically discussed and credibility determinations expressed." *Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir.1984). The failure to make credibility determinations concerning such evidence requires a reversal. *Id.* Although the ALJ recited the testimony by Bougadis, the ALJ did not make any credibility determinations or in any other way reject Bougadis' testimony.

The sole medical record consists of two physicians' reports. Dr. Lidgren, a psychiatrist, apparently examined plaintiff on a single occasion. There is no indication in Dr. Lidgren's report that he did anything other than talk with plaintiff. Dr. Lidgren concluded that plaintiff does not have a mental impairment so severe that he is not able to engage in substantial gainful activity. Dr. Lidgren did diagnose plaintiff as having a borderline personality disorder.

Dr. Vera, plaintiff's treating physician, performed tests on plaintiff consisting of a neuropsychological interview, the Halstead-Reitan neuropsychological battery, a tactile performance test, the trail making test, the seashore rhythm test, the Weschler Adult Intelligence Scale—revised (WAIS), the Aphasia screening test, a category test, the Weschler memory scale, and the NNPI. Dr. Vera stated that plaintiff is currently undergoing outpatient treatment consisting of biofeedback and individual counseling. In Dr. Vera's opinion, plaintiff "is not at this time able to engage in competitive employment." Tr. 137. "It appears that the patient is likely to experience difficulties in complex spatial-perceptual functioning including complex planning and sequencing and responding in novel learning situations." Tr. 141. In reference to the voices or auditory hallucinations which plaintiff testified about, Dr. Vera wrote: "It may [be] hypothesized that the patient is experiencing such types of interference

---

ing] for you to be alive [able] to play, at least some part of my body, you know...." Tr. 38.

These are just a few examples of portions of the transcript which the Court suspects were not

accurately transcribed. This is yet another example of the Secretary's inability to produce an accurate and reliable record for this Court to review.

which frighten him and increase his level of anxiety." Tr. 142.

There is overwhelming evidence in the record that plaintiff's ability to perform basic work-related activities is significantly limited by his mental impairment. Therefore, the Secretary should have concluded that the plaintiff had carried his burden of presenting substantial evidence that he suffers from a severe impairment. Having determined that the Secretary erroneously concluded that the plaintiff did not suffer from a severe impairment, the question remains whether this case should be remanded for further proceedings.

■ There is substantial evidence in the record that plaintiff's inability to remember, his slowness and his lack of concentration prevent him from performing his past relevant work. There is nothing in the record refuting this. Therefore, the Secretary should have concluded that plaintiff could not perform his past relevant work.

At this point in the analysis the burden of persuasion shifts to the Secretary to establish by substantial evidence that plaintiff could perform some other work that exists in the national economy. *McCoy,* 683 F.2d at 1146–47. The Secretary had ample opportunity to develop the record in order to determine if there was substantial evidence that plaintiff was not disabled. The Secretary failed to do so.

Had the Secretary properly applied the law in this Circuit, had the Secretary properly considered the evidence, and had the Secretary properly made the findings fairly presented by the record, plaintiff would have been found disabled. Therefore, remand would simply delay receipt of benefits. *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).

For the reasons stated above, it is hereby ORDERED that:

1) defendant's motion for summary judgment is denied;

2) plaintiff's motion for summary judgment is granted;

3) the Secretary shall calculate the amounts due under this Order and process this claim on an expedited basis; and

4) within thirty days from the date of this Order, the Secretary shall report to the Court the amounts due plaintiff under this Order and the date when the benefits will be commenced.