Mark A. TURLEY, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.

No. 90–2640.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1991.

Decided June 26, 1991.

Publication Granted July 22, 1991.

Michael Depree, Ottumwa, Iowa, for appellant.

Janet Braggs, Kansas City, Mo., argued, for appellee, Gene W. Shepard, John E. Beamer, Des Moines, Iowa, Frank V. Smith III, Dallas, Tex., and Janet Braggs, Kansas City, Mo., on the brief.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

PER CURIAM.

Mark A. Turley appeals the district court's [1] order affirming the Secretary of Health and Human Services' (Secretary) denial of his application for supplemental security income (SSI). Turley claims that substantial evidence does not support the decision of the Secretary and that the Administrative Law Judge (ALJ) misapplied the legal standards for evaluating the evidence. We affirm.

## I. BACKGROUND

Turley appeals the denial of his October 1988 application for SSI.[2] In his application, Turley alleged disability due to his asthma. The medical evidence indicates, and the ALJ found, that Turley has a history of steroid dependent asthma and that he suffers from lower back pain and severe esophageal reflux.[3] The record indicates that the severity of these maladies varies over time. The ALJ also found that Turley has a verbal IQ of 73 and reads and writes at a third grade level. Turley completed the twelfth grade through special education classes.

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. At the same time he appealed this case, Turley filed a new application for SSI and the Secretary found him eligible for SSI commencing September 1990. This appeal thus concerns a claim for SSI for the period commencing October 1988 and ending August 1990.

3. "[G]astroesophageal r., reflux of the stomach and duodenal contents into the esophagus, which may sometimes occur normally, particularly in the distended stomach postprandially, or as a chronic pathological condition (see *reflux esophagitis,* under *esophagitis* ). Called also *esophageal r."* Dorland's Illustrated Medical Dictionary 1441 (27th ed. 1988).

At the time of the administrative hearing, Turley worked at a sheltered workshop at the Lee County Adult Activity Center. The crux of the issue on appeal arises from Turley's frequent absences from work. The parties dispute whether Turley's excessive absences result from his medical condition or merely represent Turley's unwillingness to work.

At the administrative hearing, the vocational expert testified that an employer generally would not tolerate more than one or two absences per month. The ALJ specifically found that Turley frequently missed work during the months of September 1988 through April 1989.

Turley introduced documentary evidence from several sources to support his contention that his absences were brought about by his medical condition. Those sources included a letter from Bonny Sammons, a social worker for the state of Iowa; a report from C.W. Lind, Jr., Assistant Director of the Lee County Activity Center; and a letter from Luann Glover, a general relief director with Lee County. These three stated that Turley's frequent absences from work were caused by asthma-related problems.

Additionally, Turley's hometown treating physician, William J. Schulte, reported that Turley continued to have problems with chronic asthma and esophageal reflux. Dr. Schulte's statements indicated that Turley experienced difficulty with his asthma and reflux at the sheltered workshop. Dr. Schulte concluded that although Turley could perform sedentary work, with the combination of Turley's problems, including his inability to read, his chances of finding employment were quite limited and made him quite disabled. Turley's treating physician at the University of Iowa Hospitals, J. Montgomery Smith, substantially concurred in Schulte's diagnosis and conclusion.

Finally, Turley introduced two reports from the Iowa State Vocational Rehabilitation Facility (ISVRF). In 1984, ISVRF evaluated Turley's prospects for employability. After an in-depth analysis and work-up, the facility concluded that Tur-

ley's health had rapidly gone downhill and ISVRF could not provide any prospects for his employability. In March 1988, the ISVRF responded to a letter from Turley requesting information regarding his level of disability and the involvement of the vocational rehabilitation services. ISVRF's response relied primarily upon the 1984 evaluation and merely reiterated its earlier conclusions.

Evidence submitted from evaluators at the Hope Heaven Development Center (Hope Heaven) substantially contradicted the above evidence. From March 3, 1988 through March 31, 1988, Turley was evaluated at Hope Heaven. At first, the evaluators were optimistic that they could help Turley. Their initial report indicated that Turley had difficulty maintaining a good work attitude while dealing with his medical problems. The report also acknowledged that, despite his attitude problem, many of his absences were legitimate.

However, shortly into the program, the evaluators at Hope Heaven were forced to terminate services due to Turley's behavior and attitude. The evaluation team concluded, "Mark has the ability and the stamina to work on many jobs; but that his main barriar [sic] to employment at this point is his poor work attitude and his desire to be told that he cannot work and may receive Disability." App. at 669. The final report from Hope Heaven, dated March 31, 1988, characterized Turley as insincere, bored, incapable of taking criticism, and prone to use his physical problems to get off work.

The ALJ rendered a decision in which he found that Turley's impairments were not sufficiently severe to be disabling and therefore denied the application for SSI benefits. The ALJ found that although the record indicated that Turley was frequently absent from the sheltered workshop, his absences were not all caused by medical problems. Rather, he found that "[t]he record shows that the claimant's work habits are improving and that there has been no problem, either physical or mental, to suggest that he could not maintain satisfactory attendance and punctuality if he chose to do so." App. at 33. The ALJ

concluded that it appeared that Turley was more intent on obtaining disability benefits than working.

The Appeals Council of the Social Security Administration denied Turley's request for review and the decision of the ALJ became the final decision of the Secretary. Turley appealed the Secretary's denial of benefits to the United States District Court for the Southern District of Iowa. The district court affirmed the decision of the Secretary.

Turley then sought review from this court, raising the following issues: (1) the district court erred in ruling that substantial evidence supported the findings of the ALJ; (2) the ALJ improperly ignored evidence of the treating physicians; (3) the ALJ erred by giving greater weight to the vocational expert's testimony than to the reports from ISVRF; and (4) the ALJ erred in rejecting certain documentary evidence without making credibility findings. We conclude that the ALJ properly analyzed the evidence and that substantial evidence supports the ALJ's decision.

## II. DISCUSSION

An applicant is considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp.1991).

Turley primarily contends that the ALJ's decision was not supported by substantial evidence contained in the record as a whole. According to Turley, the evidence, properly analyzed, established that he could not engage in any substantial gainful activity because his medical impairments caused him to miss work more times than an employer would tolerate. Crucial to Turley's argument are the alleged legal errors in the review of the evidence presented. Accordingly, we will address his evidentiary claims first.

### A. Evidence of Treating Physicians

Turley argues that the ALJ failed to accord deference to the opinions of his treating physicians as required under Eighth Circuit caselaw. *See, e.g., Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). The record indicates, however, that the ALJ accepted the medical opinions of the treating physicians, but simply refused to accept their other conclusions which were based, in part, on vocational factors. The ALJ acted properly.

The deference given to opinions of treating physicians is not unlimited. *See, e.g., Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) (conclusory statements by treating physician not entitled to greater weight than any other physician's opinion). As with any expert witness, the treating physician's opinion is subject to criticism as being outside his or her area of expertise. *Cf. Williams v. Pro–Tec, Inc.*, 908 F.2d 345, 348 (8th Cir.1990) (expert's lack of particular expertise in related area goes to weight of opinion). Here, the evidence failed to establish that either of Turley's treating physicians qualified as experts in vocational matters. As such, the ALJ properly discounted the portions of their opinions based on vocational matters.

### B. ISVRF Reports

Turley's argument that the ALJ erred by relying on expert testimony rather than two reports generated by ISVRF lacks merit. The vocational expert's testimony was procured at the administrative hearing and was based upon current information. In contrast, ISVRF's first report was based upon an evaluation performed in 1984, nearly four and one-half years before Turley's application for SSI benefits. Furthermore, the 1988 report appears to be based solely upon the 1984 evaluation as it does not indicate that Turley underwent any additional evaluation or testing by ISVRF.

To receive SSI benefits, an applicant must be disabled during the pendency of his or her application. *See* 42 U.S.C.A. § 1382(c) (West 1983 & Supp.1991); 20 C.F.R. §§ 416.330, 416.335 (1990). Accord-

ingly, the ALJ did not err by giving greater emphasis to the more recent evidence as it was more probative of the issue before the ALJ.[4]

### C. Documentary Evidence

Turley contends that the ALJ erred in rejecting the conclusions contained in the documentary evidence prepared by Ms. Sammons, Mr. Lind and Ms. Glover without making credibility findings. Turley argues that specific credibility findings are required by this court's holdings in *Smith v. Heckler*, 735 F.2d 312 (8th Cir.1984) and *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir.1984). We disagree.

A review of *Smith* and *Basinger* indicates we were concerned with a situation wherein the ALJ apparently ignored substantially *uncontroverted* subjective testimony of family members and others. Under those circumstances, we held that the ALJ must indicate on the record why he or she rejects such testimony to establish, at the least, proof that he or she gave such testimony adequate consideration. *Smith*, 735 F.2d at 317; *Basinger*, 725 F.2d at 1170. Accordingly, in *Basinger*, we wrote:

> Where proof of a disability depends substantially upon subjective evidence, as in this case, a credibility determination is a critical factor in the Secretary's decision. Thus, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."

725 F.2d at 1170 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)).

Those cases simply do not describe the present situation. Here, proof of disability did not depend substantially upon subjective evidence. To the contrary, the ALJ received evidence from professional vocational evaluators at Hope Heaven indicating that even with Turley's medical impairments he could work and maintain satisfactory attendance. Moreover, this evidence directly contradicted the opinions expressed in the letters. Additionally, we note that the ALJ specifically referenced Ms. Glover's opinion, as well as concluding that "neither the objective nor the *subjective* evidence of record shows an impairment or combination of impairments that meets/equals the level of severity of the 'Listing of Impairments'." App. at 31 (emphasis added). Thus, we are not left wondering whether the ALJ considered the letters. Under the circumstances of this case, the ALJ was not required to explicitly set forth specific credibility findings.

### D. Substantial Evidence

Having determined that the ALJ applied the correct legal standards in analyzing the evidence, we turn to whether substantial evidence exists to support the ALJ's decision. The concept of substantial evidence has been defined as:

> something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

*Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir.1988). When reviewing the substantiality of the evidence, the court must take into account all evidence in the record which clearly detracts from the weight of the evidence supporting the ALJ's decision. *See, e.g., Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987). Bearing these standards in mind, we conclude that substantial evidence in the record as a whole supports the ALJ's determination that Turley was not entitled to SSI benefits at that time.

### III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

---

**4.** Turley's reliance upon *Ekeland v. Bowen*, 899 F.2d 719 (8th Cir.1990) is misplaced. The ISVRF evaluation at issue in *Ekeland* occurred during the pendency of the claimant's application. Thus, contrary to the facts in this case, the evaluation occurred during a relevant time and reflected the claimant's condition for the period at issue in that case.