# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3757

_____

Donna Willcockson,                          *
                                            *
            Appellant,                       *
                                            *   Appeal from the United States
     v.                                      *   District Court for Western
                                            *   District of Missouri.
Michael J. Astrue, Commissioner,            *
Social Security Administration,             *
                                            *
            Appellee.                        *

_____

Submitted:  June 13, 2008
Filed: August 28, 2008

_____

Before MELLOY, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Donna Willcockson appealed the judgment of the district court affirming the decision of the Social Security Administration (SSA) denying her disability income benefits, *see* 42 U.S.C. § 423, and supplemental security income benefits, *see* 42 U.S.C. § 1382. We review the district court's decision *de novo* to determine whether SSA's decision complies with the law and is supported by substantial evidence in the record as a whole. *See Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000).

In order to recover SSD or SSI benefits, a claimant must be "disabled," which generally means that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or has lasted or is expected to last at least a year. 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The Secretary uses a five-step sequential evaluation process to determine whether a claimant meets this requirement. *Hudson v. Bowen*, 870 F.2d 1392, 1394 n.1 (8th Cir. 1989); *see* 20 C.F.R. §§ 404.1520, 416.920. (For the sake of economy, we refer in the balance of this opinion to regulations governing disability income claims only, but the regulations governing Ms. Willcockson's SSI claim are identical in all relevant respects.)

After Ms. Willcockson's claims were denied initially, she was given a hearing before an administrative law judge. The ALJ denied her claims at step four of the evaluation process because he concluded that she could perform her past relevant work and was therefore not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Before determining whether a claimant can do her past work, an ALJ must assess the claimant's residual functional capacity (RFC), *i.e.*, the degree to which the claimant is able to perform work-related activities despite the limitations caused by his or her impairments and any related symptoms, such as pain. 20 C.F.R. § 404.1545. The ALJ then compares the claimant's RFC to the skills required to perform his or her past employment to determine whether the claimant is capable of doing any of those jobs.

On appeal, Ms. Willcockson challenges the ALJ's determination that she can do her past relevant work on several grounds: She contends that the ALJ erred by implicitly relying on the opinion of a state medical consultant to determine her RFC without explaining the weight given to his opinion; by failing to consider relevant evidence when determining that her complaints of pain were not fully credible; by rejecting an examining doctor's opinion regarding her RFC; and by failing to consider all of her credible impairments when determining her RFC.

Though we think that the question is close, we conclude that we must remand because we cannot determine from the written decision whether the ALJ properly reviewed the evidence. Several errors and uncertainties in the opinion, that individually might not warrant remand, in combination create sufficient doubt about the ALJ's rationale for denying Ms. Willcockson's claims to require further proceedings below.

The parties agree that the ALJ, in determining Ms. Willcockson's RFC, implicitly relied on a September, 2004, RFC assessment by a nonexamining state medical consultant, Dr. Kinsey Van. In the circumstances here, the regulations required the ALJ to "explain in the decision the weight given to the opinions of a State agency medical ... consultant," 20 C.F.R. § 404.1527(f)(2)(ii), but the ALJ did not do so. We think that such an explanation would be particularly helpful here because of a seventeen-month gap between Dr. Van's assessment and Ms. Willcockson's hearing, during which she received additional medical treatment that Dr. Van, of course, could not have known about. The SSA's regulations specifically say that the agency will "evaluate the degree to which [the opinions of "nonexamining sources"] consider *all* of the pertinent evidence in [a] claim, including opinions of treating and other examining sources," as well as the "degree to which [nonexamining sources] provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3) (emphasis added). Of course, the opinions of nonexamining sources are generally, but not always, given less weight than those of examining sources, *see* 20 C.F.R. § 404.1527(d)(1). By explaining the weight given to Dr. Van's assessment, the ALJ would have both complied with the regulation and assisted us in reviewing the decision.

With regard to determining Ms. Willcockson's credibility, the ALJ again omitted relevant information from his decision. Ms. Willcockson offered into evidence statements from her mother, her daughter, and her sister regarding her condition. The statements were written on social security forms, and they each signed

them under a printed affirmation stating that they understood that making a false statement of material fact was a federal crime. We cannot determine from the record whether the ALJ overlooked these statements, gave them some weight, or completely disregarded them. Ms. Willcockson relies on a case where we held that remand was required when an ALJ failed to explain why evidence from lay persons was rejected. *See Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir.1984). But failure to do so does not always result in a remand. For example, we have sometimes concluded that third-party evidence supporting a claimant's complaints was the same as evidence that the ALJ rejected for reasons specified in the opinion. In such circumstances, we have refused to remand based on an "arguable deficiency in opinion-writing technique" that had no effect on the outcome of the case. *Robinson v. Sullivan* , 956 F.2d 836, 841 (C.A.8 (Neb.),1992) (internal quotation marks and citation omitted); *see also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995). We note that in *Robinson*, 956 F.3d at 841 and *Lorenzen*, 71 F.3d at 319, the decision of the ALJ made it clear that the ALJ had discredited the third-party statements, though it did not explain why. Here, as we have said, the decision does not say that the statements were considered at all.

In addition to medical evidence, when determining RFC the ALJ must consider the observations of treating doctors and others and the claimant's own description of her limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). We have held, too, that statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). And we question whether witness statements corroborating a claimant's subjective complaints can logically be treated as cumulative by assuming that they would have been rejected for the same reasons that the claimant statements were rejected, where the agency itself says that because subjective complaints are hard to document, it will "carefully consider" evidence from other persons addressing the extent of the claimant's pain and how it affects his or her ability to function. *See* 20 C.F.R. § 404.1529(c)(3). Of course witnesses such as the

family members who gave statements here often may be the only ones who witness a claimant's difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether. In any event, the ALJ's failure to refer in his decision to these three statements is another reason supporting our decision to remand.

Finally, we are troubled by some of the reasons that the ALJ gives for disbelieving Ms. W'illcockson's statements that she suffers disabling pain. The ALJ agreed with Dr. Hwang, an examining physician, that Ms. Willcockson had impairments that "significantly limit[ed] [her] physical or mental ability to do basic work activities" ("severe impairments"), 20 C.F.R. § 404.1520(c), namely, "Meniere's syndrome, asthmatic bronchitis, lumbar radicuralgia, with possible bulging disc at L4-L5 and L5-S1 levels, and osteoarthritis of the lumbosacral spine." The ALJ further found that Ms. Willcockson's "medically determinable impairments could reasonably be expected to produce [her] alleged symptoms." But the ALJ found that Ms. Willcockson's statements regarding the "intensity, duration and limiting effects of these symptoms [were] not entirely credible." The ALJ then provided some reasons for disregarding Ms. Willcockson's complaints based on inconsistencies in her testimony and her refusal of certain forms of treatment, which we believe are supported by the evidence.

But the ALJ also said that he did not accept her testimony regarding her pain because "the severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of her condition." At first blush, this appears to us to be a medical conclusion: It seems to us that the ALJ is saying that Ms. Willcockson's "condition" (we are unsure of what "condition" is referred to, since she has quite a few severe impairments) has a "usual expected severity." Of course, the ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record. But we have not located supporting evidence in the record, and neither the ALJ, nor the SSA on appeal, has referred to any. Later in the decision, the ALJ similarly "finds

that the claimant's description of the severity of the pain has been so extreme as to appear implausible and the description of symptoms is unusual and is not typical for the impairments that are documented by the medical findings in this case." We are unsure what particular symptoms are "usual" or "typical" for Ms. Willcockson's impairments, and what evidence the ALJ relied on to make these statements. These matters, of course, can be clarified by the ALJ on remand.

For all of the reasons stated, we remand this case to the district court with directions to remand to the SSA for further proceedings consistent with this opinion.

_____