**Joseph EKELAND, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

**No. 89–1506.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1989.

Decided March 28, 1990.

Blake Parker, Fort Dodge, Iowa, for appellant.

Lawrence D. Kudej, Sioux City, Iowa, for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and WEBB,* District Judge.

HEANEY, Senior Circuit Judge.

Joseph Ekeland appeals from the district court's affirmance of the Secretary's denial of his claim for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1982). We reverse and remand.

## BACKGROUND

Ekeland, 58, claims disability based on the side effects of radiation therapy he received for a brain tumor. From 1972 to 1986, he worked as a banker, insurance agent, and farm manager in Somers, Iowa. In 1984, he was diagnosed as having an inoperable, malignant brain tumor and underwent thirty-three radiation treatments. Although the tumor is now in remission, Ekeland's radiation therapy caused a partial vision loss and subcortical dementia resulting in cognitive impairment. Ekeland applied for Social Security disability insurance benefits on July 1, 1986. A psychologist who examined Ekeland for the Social Security Administration (SSA) estimated that Ekeland's most recent IQ score of 92 reflects a decline of at least fifteen points from his level of intellectual functioning before he developed the brain tumor.

Following his radiation therapy, Ekeland's work performance deteriorated significantly. He experienced memory loss, poor attention span, and an inability to make decisions. Eventually, the bank at

* The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation.

which he was branch manager had to discharge him because his mistakes and poor customer relations caused the bank to lose business.

Ekeland's treating neurologist, Brian P. O'Neill, M.D., reported a significant and permanent decline in his cognitive abilities, and expected him never to recover to a point that would allow him to resume his former occupation. Dr. O'Neill expressed no opinion about Ekeland's ability to perform other kinds of gainful employment.

In July 1987, Ekeland enrolled in the Iowa State Vocational Rehabilitation Facility (ISVRF). Following a two-week evaluation, the ISVRF staff concluded that Ekeland's extremely slow work pace, lack of physical stamina, memory loss, poor vision, and lowered energy level all would cause him significant difficulties in meeting competitive employment expectations. The ISVRF tested Ekeland in a variety of job skill areas, but he performed poorly in all of them despite a cooperative and willing attitude.

Following the SSA's denial of Ekeland's claim for disability benefits through the reconsideration level, he received a hearing before an administrative law judge (ALJ) on September 8, 1987.[1] The ALJ found that Ekeland's impairments did not meet or equal an impairment in the Social Security Regulations Listing of Impairments, but that he could not return to his past relevant work. The ALJ called a vocational expert who testified, based on a hypothetical posed by the ALJ, that Ekeland could perform the jobs of small parts assembler, packager, and laundry and garment folder. The vocational expert also stated that these jobs exist in significant numbers in the national economy. The ALJ consequently found Ekeland not to be disabled. On appeal, the district court affirmed the ALJ's decision.

## DISCUSSION

Ekeland presents three arguments on appeal. He argues that substantial evidence on the record as a whole detracts from the evidence on which the ALJ relied, that the hypothetical posed to the vocational expert improperly failed to include all of his impairments, and that the ALJ erroneously concluded that his mental disorder did not meet the requirements for disability under the Listing of Impairments.

## I.

■ Ekeland argues that the ALJ erroneously discounted the vocational rehabilitation evaluations performed by the ISVRF. These vocational experts concluded, following two weeks of testing, that Ekeland could not be rehabilitated for any kind of competitive gainful employment. The ALJ instead relied on the opinion of the vocational expert whom he called, who examined only the exhibit file and Ekeland's work history. Additionally, because the complete ISVRF report was not included in Ekeland's file until after the administrative hearing, the vocational expert did not have the benefit of the ISVRF's full findings and conclusions regarding Ekeland's employment rehabilitation potential in responding to the ALJ's questions.

An Eighth Circuit panel recently found an ALJ to have committed legal error by ignoring the findings of the claimant's vocational expert and instead relying on the testimony of a government vocational consultant. *Jelinek v. Bowen,* 870 F.2d 457, 460–62 (8th Cir.1989). Although determinations of disability made by agencies other than the SSA are not binding on the SSA, *see* 20 C.F.R. § 404.1504 (1988), the ALJ erred by failing to give the proper weight to the ISVRF evaluation. According to *Jelinek,* an ALJ may not completely ignore the reasoned opinion of qualified vocational experts in favor of the opinion of a government vocational consultant, particularly when the government expert's opinion is elicited through a hypothetical question that does not accurately reflect the

1. Although the ISVRF evaluation was completed on August 7, 1987, only a portion of the evaluation report was available for inclusion in the administrative record at the time of Ekeland's hearing one month later. The balance of the ISVRF report was not added to Ekeland's file until after the administrative hearing.

factual record. *See Jelinek,* 870 F.2d at 458, 460 (ALJ's failure to include in hypothetical all tests and findings made on claimant by Sister Kenney Institute was error). We believe that the late inclusion of the complete ISVRF report in Ekeland's file may have prevented the ALJ from basing his conclusion regarding Ekeland's disability claim on a fully developed record.

■ The ALJ also noted that Ekeland's daily activities included house and garden work. The record shows that Ekeland helped wash dishes and mowed the lawn, and that a neighbor had helped him cut down some trees and haul some branches in his yard. These facts may have influenced the ALJ's conclusion that Ekeland was capable of performing the exertional tasks required in medium work. This court often has noted, however, that a claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment. *See, e.g., Easter v. Bowen,* 867 F.2d 1128, 1130 (8th Cir. 1989). Moreover, we believe that the ALJ failed to give the proper weight to statements in the ISVRF report indicating that Ekeland lacked physical stamina and tired easily. Ekeland's wife corroborated these statements in her testimony at the administrative hearing. We therefore believe that the ALJ's conclusion that Ekeland could perform medium work is not supported by substantial evidence.

## II.

■ Ekeland also contends that the hypothetical question the ALJ asked the vocational expert was defective in failing to include all of the ISVRF's findings. Because the conclusions of the ISVRF evaluators are uncontradicted by anything in the record and are corroborated by evidence from Ekeland's treating neurologist, this

contention is correct. This court often has held that testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision. *See, e.g., Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987); *Bradley v. Bowen,* 800 F.2d 760, 763 n. 2 (8th Cir.1986). The ALJ's hypothetical described someone with "a moderate inability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods." The hypothetical also suggested that Ekeland required a low-stress job with emphasis on working with things rather than people. The ISVRF evaluators reported that Ekeland was easily confused, disorganized, could not remember and carry out simple instructions, worked at an extremely slow pace, became tired and frustrated easily, and produced work that was inaccurate or of poor quality despite a cooperative and willing attitude. The ISVRF evaluations of Ekeland provide substantial evidence of Ekeland's impairments which should have been included in the ALJ's hypothetical. Because the vocational expert based her responses on an incomplete record and on hypothetical questions that failed to describe fully and precisely Ekeland's impairments, her conclusions contradict other evidence in the record.[2] Consequently, the ALJ's hypothetical did not adequately reflect Ekeland's impairments.

## III.

■ Ekeland also argues that the ALJ evaluated his mental disorder improperly under the Listing of Impairments in the Regulations, 20 C.F.R. Part 404, Subpart P, App. 1. He contends that he meets or exceeds all the criteria necessary for disability status on the basis of organic mental disorder. *See id.* § 12.02.[3]

---

**2.** For example, the vocational expert testified that Ekeland could work as a small parts assembler. Tests performed at the ISVRF indicated that Ekeland had difficulty with multiple step tasks and tasks requiring organization, manipulation, or inspection of many parts. Had the ALJ's hypothetical included this information, the expert might well have concluded that Eke-

land was not capable of working as a small parts assembler.

**3.** Section 12.02 states in relevant part:
   *Organic Mental Disorders:* ...
   The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

The Social Security Regulations require the use of a special procedure to evaluate all claims of mental impairment. *See* 20 C.F.R. § 404.1520a (1988). This procedure requires an ALJ to complete a Psychiatric Review Technique Form. This form assesses the severity of mental impairments by analyzing the degree of functional limitations the impairments cause in each of four categories. The categories correspond to subparagraphs 1–4 of section 12.-02, paragraph B, of the Listing of Impairments. *See supra* note 3.

Our reading of the administrative record suggests that the ALJ underestimated Ekeland's degree of limitation on his rating of impairment severity in categories 3 and 4 of the Psychiatric Review Technique Form. Category 3 includes deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. The ALJ rated Ekeland's limitation in this category as "often" on a scale ranging from "never" through "constant," with "frequent" being the degree of limitation that satisfies the Listing of Impairments. The ISVRF report indicates that Ekeland experienced at least eleven instances of confusion, poor memory, and extremely slow work pace in a two-week period of tests. Although the distinction between "often" and "frequent," the severity rating needed for an award of benefits, is not clear, the ISVRF evaluation suggests that Ekeland's deficiencies of concentration and slow work pace occurred almost daily. Thus, a rating of "frequent" in this category may have been appropriate.

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> ....
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> ....
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, ... AND
> B. Resulting in at least two of the following:

Category 4 of the Psychiatric Review Technique Form includes episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms. The ALJ found that this happened to Ekeland only once or twice on a scale ranging from "never" through "continual," with "repeated" being the degree of limitation that satisfies the Listing of Impairments. The ISVRF report indicates that Ekeland experienced at least seven instances of frustration, depression, discouragement, and poor coping skills during his evaluations. Consequently, Ekeland may qualify for a rating of "repeated" under Category 4.

Ekeland's memory impairment, loss of at least 15 IQ points, extremely slow work pace, and poor coping skills appear to fit within the standard for organic mental disorders in the Listing of Impairments. Substantial evidence on the record as a whole suggests that the functional limitations resulting from Ekeland's mental disorder are of Listing-level severity. We believe the ALJ may have concluded that Ekeland's impairments did not rise to that level because he failed to accord appropriate weight to the results of the comprehensive vocational testing performed by the ISVRF.

## CONCLUSION

We reverse the decision of the district court and remand the case with instruc-

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpart. P, App. 1, § 12.02 (1988).

tions to the Secretary that Ekeland receive another administrative hearing. The ALJ should evaluate Ekeland's impairments under the criteria for organic mental disorders in the Listing of Impairments giving full consideration to the entire record and particular attention to the findings of the ISVRF. If the ALJ concludes that Ekeland's impairments are not of Listing-level severity, he should receive testimony from a vocational expert who is fully familiar with the entire administrative record. Any hypothetical questions posed to such an expert must set forth with precision all of Ekeland's impairments.