1 F.3d 1250
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Iva WILSON, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-5203.
 United States Court of Appeals, Tenth Circuit.
 July 26, 1993.
 
 1
 Before BALDOCK and KELLY, Circuit Judges, and BENSON,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 BENSON, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Plaintiff-appellant Iva Wilson appeals from an order affirming the denial of plaintiff's application for supplemental security income benefits. Plaintiff argues that the Secretary's findings are not supported by substantial evidence and the administrative law judge (ALJ) erred in failing to adopt the vocational expert's testimony. We disagree and affirm.
 
 
 6
 Plaintiff applied for benefits on June 25, 1987. At the August 8, 1988, hearing on her claim, she testified that she was unable to work due to confusion, depression, back pain, and headaches. She quit drinking liquor two years before the hearing, but still had an occasional beer. She formerly used illegal drugs, but denied any such use since January 1987.
 
 
 7
 Medical records showed that plaintiff was hospitalized on several occasions between 1980 and 1987 for depression and alcohol and drug abuse. In September 1986, Dr. Edward Norfleet, a treating physician, diagnosed her as depressed and unable to be rehabilitated. However, in a July 28, 1987, mental status form, he found no evidence of a thinking disorder, only mild depression, and that she could remember and carry out simple orders, but would have trouble with work pressure and supervision. Plaintiff had a consultative psychiatric examination with Dr. Ronald Passmore in February 1987. Dr. Passmore found plaintiff was alert with no loss of concentration, flight of ideas, hallucinations, or bizarre thoughts. His final impressions included mixed drug use. He noted she had traded drinking for other drug use, and that her adjustment continued to be marginal. Plaintiff had a consultative physical examination with Dr. Michael Berkey on October 10, 1988. She denied drug or alcohol use. His impressions were back pain, substance abuse, and headaches.
 
 
 8
 The ALJ found that plaintiff was thirty-eight years old as of the hearing, and had completed the eighth grade. She had not engaged in substantial gainful activity since August 15, 1984, could not perform her past relevant work as a nurse's aide and cashier, and had no transferable skills. He further found that she had a severe impairment consisting of a mixed drug abuse disorder, in remission, a cyclothymic disorder, and back pain, but her impairment did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. He found her to have the residual function capacity (RFC) for sedentary work, reduced by a moderately impaired ability to cope with more than a low level of stress and react appropriately to supervision. Using the medical-vocational guidelines ("the grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework for decisionmaking, and relying on vocational expert testimony, he found that there were a significant number of jobs in the national economy that she could perform, specifically, bench assembly and sorting/mail clerk. He therefore determined that she was not disabled. The Appeals Council and district court affirmed.
 
 
 9
 We uphold the Secretary's findings if supported by substantial evidence in the record. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir.1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. We may not reweigh the evidence or substitute our judgment for the Secretary's. Id.
 
 
 10
 To determine whether a claimant is disabled, the Secretary uses a five-step sequential evaluation process. 20 C.F.R. Sec. 416.920. Plaintiff challenges the Secretary's step three finding, Sec. 416.920(d), that her impairment does not meet or equal Listing 12.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04. Listing 12.04 sets forth a two-part test. First, the claimant must show changes such as sleep disturbances, feelings of guilt or worthlessness, and thoughts of suicide. Second, the claimant must show the condition results in at least two of the following:
 
 
 11
 1. Marked restriction of activities of daily living; or
 
 
 12
 2. Marked difficulties in maintaining social functioning; or
 
 
 13
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 14
 4. Repeated episodes [of deterioration or decompensation] in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 15
 Hargis, 945 F.2d at 1487 (quoting Sec. 12.04B) (footnote omitted).
 
 
 16
 Plaintiff's testimony that she has sleep disturbances, little energy, feelings of guilt or worthlessness, difficulties concentrating or thinking, thoughts of suicide, and hallucinations, even if accepted by the ALJ as true, would only satisfy the first part of the test. Plaintiff also was required to satisfy the second part of the test.
 
 
 17
 The ALJ found plaintiff did not satisfy any of the requirements of the second part of the test. Specifically, he found that plaintiff had only a slight restriction of daily activities. He relied on evidence that she washes dishes, makes beds, does some cooking if she feels up to it, washes and irons clothes sometimes, reads, and watches television. He further found that she had moderate difficulties in maintaining social functioning based on evidence that, although she has had difficulties with her husband and children, she visits friends and relatives. Because Dr. Passmore had found plaintiff alert with no loss of concentration, the ALJ found that she seldom had deficiencies of concentration, persistence, or pace. Finally, he found no evidence of any episodes of deterioration or decompensation in work or work-like settings. We conclude substantial evidence supports the finding that plaintiff's impairment does not meet or equal Listing 12.04.
 
 
 18
 Plaintiff challenges the step five finding, 20 C.F.R. Sec. 416.920(f), that her impairments do not prevent her from performing other work in the national economy. She claims disability due to alcoholism and drug dependence, which are considered nonexertional impairments. Channel v. Heckler, 747 F.2d 577, 580 (10th Cir.1984). The ALJ found, however, that plaintiff is able to control her use of alcohol and drugs. While no Tenth Circuit social security decisions concerning the standards governing evaluation of alcoholism and drug dependence were brought to our attention, other circuits have held that where there is evidence of alcohol abuse, the issue is whether the claimant has lost his or her ability to control its use. McShea v. Schweiker, 700 F.2d 117, 119 (3d Cir.1983); Adams v. Weinberger, 548 F.2d 239, 244 (8th Cir.1977).
 
 
 19
 Plaintiff, relying on decisions from other jurisdictions, argues that her testimony, alone, cannot support the finding that she is able to control her drinking and drug use. See Metcalf v. Heckler, 800 F.2d 793, 796 (8th Cir.1986) (finding of ability to control alcoholism cannot rest solely on claimant's testimony). Assuming the ability to control one's drinking or drug use is the test that would apply in this circuit, we need not resolve whether a claimant's testimony, alone, is sufficient to prove an ability to control such use because here there is other substantial evidence of that fact. See id. at 797 (finding that claimant able to control his drinking upheld where based on his testimony as well as other evidence such as his statements to medical personnel that he had quit, a negative blood alcohol test, and lack of outward signs of intoxication at the hearing).
 
 
 20
 The medical records document plaintiff's repeated hospitalization for alcohol and drug abuse between 1980 and January 1987. There are no records of hospitalizations for alcohol or drug abuse after January 1987. A drug test taken during a May 1987 admission for chest pain was negative for alcohol and all drugs except barbiturates. However, the test notes that "[p]ositive results are only presumptive evidence for the presence of the drug. False positivity cannot be discounted without confirmatory tests." Aplt's App.Vol. II at 362-63. Upon a July 1987 admission for head pain, plaintiff's friend told hospital staff that plaintiff drank a six-pack of beer and took four or five unnamed red pills before arriving.
 
 
 21
 Plaintiff told Dr. Passmore in February 1987 that she quit drinking liquor in April 1986, but used amphetamines, narcotics, and pot. However, she reported to Dr. Norfleet on March 5 and May 20, 1987, that she no longer used street drugs. She told Dr. Berkey in October 1988 that she quit using drugs and alcohol three years previously.[1]
 
 
 22
 Evidence other than plaintiff's testimony--specifically, the lack of hospitalizations, negative alcohol test, and her assertions to her doctors--supports the finding that she stopped abusing alcohol after January 1987. While the positive drug test is presumptive evidence that plaintiff continued using barbiturates until at least May 1987, her lack of hospitalizations for drug use and denials of such use to her doctors support the finding that she has not abused drugs since that time. As it is not our function to reweigh the evidence, we uphold the finding that plaintiff is able to control her alcohol and drug use.
 
 
 23
 Plaintiff next argues that the ALJ's hypothetical question to the vocational expert (VE) failed to take into account plaintiff's nonexertional impairments. However, the ALJ's decision did not rely on the VE's answer to the ALJ's question. Rather, it relied on the VE's response to plaintiff's hypothetical question.
 
 
 24
 Plaintiff finally contends that the ALJ was required to adopt the VE's favorable response to plaintiff's revised hypothetical question that asked the VE to assume the individual is so severely depressed three weeks a month that she cannot get out of bed and go to work. " '[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.' " Hargis, 945 F.2d at 1492 (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir.1990)). However, the ALJ is not bound by the VE's response to a hypothetical including impairments that are not accepted as true by the ALJ, Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir.1990), and that are unestablished and conclusive, Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.1993). The ALJ properly rejected plaintiff's claim that she was so depressed she could not get out of bed and go to work as this claim conflicted with medical evidence to the contrary. Accordingly, we conclude the ALJ was not required to adopt the VE's response to plaintiff's revised hypothetical.
 
 
 25
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Dr. Berkey noted that accompanying records showed several admissions within the last year and a half with drug abuse documented. The only post-January 1987 medical records indicating drug abuse are those discussed above