46 F.3d 1149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John WOODWARD, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 93-15771.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 17, 1994.*
Decided Dec. 30, 1994.
 
 Before: FARRIS, BOOCHEVER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I.
 
 2
 Woodward asserts that the Secretary erroneously rejected the treating physician's opinion that all jobs would be too stressful. We overturn the Secretary's decision to deny benefits only if it is not supported by substantial evidence or it is based on legal error. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).
 
 
 3
 To reject the opinion of a treating physician, the ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (quotation omitted).[1] The ALJ has satisfied this requirement. First the ALJ found that Dr. Goldstick conclusion about job stress is inconsistent with other correspondence. Determining credibility and resolving conflicts in medical testimony is the responsibility of the ALJ. Magallanes, 881 F.2d at 750. On May 17, 1990, Dr. Goldstick wrote that he had "encouraged [Woodward] to become active involving exercise and seeking a job as he sees fit." On August 2, 1990, Dr. Goldstick wrote that Woodward was doing "considerably better." Woodward had more energy and his mental outlook was improving. Woodward was "much more involved playing golf and racquet ball and he is much more active." Woodward still had a decreased attention span and had difficulty with short-term memory, but "he is doing quite well from a neurological standpoint." On August 24, 1990, in a letter addressed "To Whom It May Concern," Dr. Goldstick was less optimistic. He wrote that Woodward was suffering from a "significant attention deficit" and "extreme apathy." He concluded that Woodward is "totally incapacitated" and "unable to participate actively in his previous occupation." On November 6, 1990, Dr. Goldstick reported that Woodward was "doing quite well," noting improvement in introversion, memory, and slurred speech. Because of this conflicting testimony, the ALJ rejected Dr. Goldstick's conclusion in his April 22, 1991 letter that Woodward is totally disabled from all work activity.
 
 
 4
 The ALJ conceded that stress will limit the types of jobs available to Woodward. Nevertheless, relying on Woodward's own testimony, the ALJ found that Woodward's social functioning was not completely impaired and that he could perform jobs that involve minimal interpersonal contacts. To justify this conclusion he noted that Woodward plays racquetball several times a week; that he performs household chores such as cooking, installing a dishwasher, and fixing a leaky ceiling; and that he drives an automobile and visits family and friends.
 
 
 5
 Finally, other evidence in the record not specifically cited by the ALJ supports his conclusion. Although nearly every doctor concluded that job stress may pose difficulties, none of them indicated that Woodward would be precluded from all jobs. Psychologist Dr. Gross concluded that "[h]is ability to cope with the daily stresses of an ordinary work routine seems impaired." Psychologist Dr. Genardi concluded that Woodward's ability to deal with stress was "good" to "fair," good being defined as "limited but satisfactory" and fair being defined as "seriously limited, but not precluded." Kathleen Burch, a clinical psychologist, stated that Woodward "can again become meaningfully employed" with cognitive rehabilitation. Also, Burch found that Woodward has an above average ability to cope with stress. Rosemary Feely-Bailey, a speech/language pathologist, stated that "[Woodward] could probably withstand the ordinary stress and pressures of a work situation with little problem, given a job situation that he felt was appropriate to his level of functioning."
 
 
 6
 Furthermore, several of the doctors seemed more concerned about his boredom with less interesting work than his stress. Feely-Bailey concluded that Woodward would probably have difficulty with simple repetitive tasks due to "boredom and disgust." Dr. Genardi stated that Woodward may get "drowsy" with repetitive tasks. Thus, there is substantial evidence in the record to support the ALJ's conclusion that Woodward can work in low stress jobs.
 
 II.
 
 7
 Woodward contends that the vocational expert's opinion about the availability of jobs is not supported by substantial evidence because the expert based his opinion on a faulty hypothetical question. The ALJ asked the vocational expert to assume that Mr. Woodward could perform simple tasks involving a minimal degree of personal contact. Woodward's counsel contends that the ALJ should have mentioned that Woodward suffers from anxiety and stress, short-term memory lapses and learning impediments, and fatigue and apathy.
 
 
 8
 If a claimant shows that he cannot return to his previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work. Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1278 (9th Cir.1987). The Secretary may not rely on the opinion of a vocational expert if the expert testifies on the basis of a hypothetical question that is not supported by the record and does not reflect all of a claimant's limitations. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988).
 
 
 9
 The hypothetical question was appropriate. First, the ALJ's hypothetical accurately reflected that Woodward may suffer from job stress and anxiety. The ALJ found that Woodward's stress was primarily caused by interpersonal contacts. Consequently, the ALJ limited the hypothetical question to those jobs involving "just a minimal degree of personal contact in the workplace."
 
 
 10
 The ALJ's hypothetical question also reflected Woodward's short term memory impairments by limiting the hypothetical to "simple tasks." This restriction is supported by Dr. Gross's finding that Woodward is able to follow "one-step instructions" and by Woodward's own testimony of his daily activities and household work.
 
 
 11
 Finally, there is no dispute that the ALJ's hypothetical question did not reflect Woodward's alleged apathy and lethargy. Apparently the ALJ decided that Woodward's apathy and lethargy, if it existed, did not affect his employment opportunities. The ALJ found that Woodward's symptoms include "lethargy and depression," but that there is "[n]o evidence of any significant physical limitations which would limit the claimant's ability to work in any respect." In spite of conflicting evidence in the record, the ALJ's resolution of the issue is supported by substantial evidence. At the hearing Woodward testified that he is suffering from lethargy. But a vocational report in August of 1990 stated that "[Woodward] does not indicate any loss of energy." Woodward also told Dr. Gross in September 1990 that he was suffering from short-term memory problems, but no other physical or mental problems. In June 1990, Dr. Genardi reported that Woodward was suffering from "extreme fatigue." In May 1991, Dr. Genardi indicated that job "motivation" would not be a problem for Woodward. Dr. Goldstick's letters varied from reports of "chronic fatigue [and] lassitude" to no mention of fatigue or apathy.
 
 
 12
 The issue concerning apathy and lethargy is nearly identical to Ekeland v. Bowen, 899 F.2d 719 (8th Cir.1990). In Ekeland the patient was suffering from memory loss, poor attention span, and a lack of physical stamina. Based on the testimony of a vocational expert, the ALJ found the Ekeland could perform the jobs of small parts assembler, packager, and laundry and garment folder. The Eighth Circuit reversed, holding that the ALJ's hypothetical question was faulty because it did not include uncontroverted evidence that Ekeland suffered from poor physical stamina. Id. at 722. In this case, there is substantial evidence, although controverted, that Woodward is not suffering from apathy or lethargy to a degree that would affect employment opportunities.
 
 
 13
 AFFIRMED.
 
 
 14
 BOOCHEVER, Circuit Judge, concurring.
 
 
 15
 I agree with the result reached by the majority except that I think that the difference between the Sixth Circuit rule and the Ninth Circuit rule regarding the weight to be given the treating physician's opinion could have affected the ALJ's result in this case. We have no way of knowing whether he would have reached the same result as to Woodward's ability to be gainfully employed had he given the Ninth Circuit's deference due a treating physician's opinion. Accordingly, I believe we have to resolve whether the Sixth or Ninth Circuit rule applies, but because it seems clear to me that the Sixth Circuit rule is applicable, I join the majority in affirming.
 
 
 16
 The Ninth and Sixth Circuits have different criteria for weighing the opinions of treating physicians. The Sixth Circuit rule states:
 
 
 17
 The Secretary, however, is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary. Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence. Cutlip v. Secretary of Health & Human Servs., 25 F.3d 284, 287 (6th Cir.1994) (citations omitted).
 
 
 18
 The Ninth Circuit, on the other hand, gives more deference to the treating physicians' opinions.
 
 
 19
 To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must " 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' "
 
 
 20
 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).
 
 
 21
 Thus in the Ninth Circuit, the treating physician's opinion controls over conflicting reports of an examining physician, unless the ALJ makes specific findings giving legitimate reasons for discounting the treating physician's opinion. The Sixth Circuit, however, does not consider treating physicians' opinions binding and will accord them great weight only when they are supported by sufficient clinical findings and are consistent with the evidence. In that circuit, in effect, the treating physicians' opinions are treated with little difference from that of other evidence, while in the Ninth Circuit, the treating physicians' opinions control in the absence of the ALJ's setting forth specific legitimate reasons based on substantial evidence for ruling otherwise.
 
 
 22
 In this case, applying the less deferential Sixth Circuit rule, I agree with the majority that there is sufficient conflicting evidence from that of the treating physician to require affirmance of the ALJ's decision. If, however, the ALJ had been bound by the Ninth Circuit decisions, we cannot say he would have made the same decision as to Woodward's ability to be employed gainfully.
 
 
 23
 When the ALJ has applied an incorrect legal standard in reaching a decision, we must remand unless, as a matter of law, the result could not be affected. See NLRB v. Enterprise Assoc., 429 U.S. 507, 522 n. 9 (1977); Sagebrush Rebellion, Inc. v. Hodel, 790 F.2d 760, 765 (9th Cir.1986) (agency may rely on harmless error rule only when its mistake had no bearing on the substance of the decision). Here, if the ALJ had applied the Ninth Circuit test, he could have found Woodward disabled, and on this record, we would have to affirm under the well established principle that the Secretary's determination will be upheld when there are conflicts in the evidence susceptible to one or more rational interpretations. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987)
 
 
 24
 The parties have cited no social security cases involving resolution of conflicts between the rules of different circuits, but I believe that under the circumstances presented to us the Sixth Circuit rule must prevail. Woodward's disability arose in that circuit, and his claim was heard by an ALJ there. Thus, not only was there no reason for the ALJ to apply the rule of another circuit, but it would have been improper for him to do so. It was the circumstance that Woodward moved to Nevada that caused the appeal to be filed in the Ninth Circuit. Thus, pursuant to 42 U.S.C. Sec. 405(g), based on that fortuitous occurrence, his appeal came before this court rather than a panel of the Sixth Circuit.
 
 
 25
 The ALJ certainly did not commit error in applying the Sixth Circuit rule, and we accordingly should review the decision under that circuit's standard. The ALJ has satisfied the Sixth Circuit requirements.
 
 
 
 *
 The panel finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of the Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We recognize that the ALJ applied a Sixth Circuit test when considering the treating physician's letter to Woodward's attorney. We need not decide whether we must apply Sixth Circuit law because the ALJ's decision was proper under either test. See Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir.1993) (holding that the Secretary is not bound by a treating physician's opinion if the treating physician has provided conflicting opinions). In his concurrence, Judge Boochever argues that "[w]e have no way of knowing whether [the ALJ] would have reached the same result" under the 9th Circuit test. This hypothetical question does not affect our analysis because the ALJ's written decision in our opinion also satisfies the 9th Circuit test