Brenda S. SCARBORO, Plaintiff,

v.

Shirley S. CHATER,[1] Commissioner
of Social Security, Defendant.

No. 94–4207–SAC.

United States District Court,
D. Kansas.

July 27, 1995.

Roger D. Fincher, Bryan, Lykins & Hejt-
manek, P.A., Topeka, KS, for plaintiff.

Jackie A. Rapstine, Office of United States
Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

Brenda S. Scarboro appeals the denial of
her application for disability benefits under
Title II of the Social Security Act, 42 U.S.C.
§§ 401 *et seq.*, and the denial of her applica-
tion for supplemental security income bene-
fits based on disability under Title XVI of the
Social Security Act, 42 U.S.C. §§ 1381 *et
seq.*[2] Scarboro seeks either an immediate

---

1. Effective March 31, 1995, the functions of the
Secretary of Health and Human Services in so-
cial security cases were transferred to the Com-

missioner of Social Security. P.L. No. 103–296.
The court hereby substitutes the Commissioner
for the Secretary in the caption of the case. For
simplicity, the court will simply refer to the de-
fendant as Commissioner.

2. "There are two social security disability benefit
programs—Disability Insurance, for people who
have qualified for social security benefits by pay-
ing social security taxes for the relevant period,
and Supplemental Security Income, for people
who have not. But the pertinent regulations are
the same for the two programs." *Eads v. Secre-
tary of DHHS,* 983 F.2d 815, 816 (7th Cir.1993).

award of benefits, or in the alternative, a remand of the case for "further fact-finding in the form of further psychological examinations and testing with providers who have previously treated the claimant." The commissioner responds,[3] arguing that the denial of benefits is supported by substantial evidence.

Scarboro's applications were denied initially and on reconsideration. On January 11, 1994, an administrative law judge conducted a hearing to consider Scarboro's claims. On May 23, 1994, the administrative law judge rendered a decision finding that Scarboro was not disabled at any time when she met the earnings requirement of the law or at any time through the date of the decision. Consequently, the ALJ found that Scarboro was not entitled to either disability benefits under Title II or to supplemental security income benefits under Title XVI. The Appeals Council of the Social Security Administration denied Scarboro's request for review and therefore stands as the final decision of the Commissioner. Scarboro timely appeals to this court.

### Summary of Relevant Facts

At the time of the hearing, Scarboro was twenty-eight years old. Scarboro has four children. Scarboro is approximately five-foot-seven-inches tall and weighs 220 pounds. Scarboro has a high school education. Scarboro has a history of alcohol and substance abuse, but has been "drug free" since 1988 and "alcohol free" for two years.

At the time of the hearing, Scarboro worked in a temporary secretarial position with the State of Kansas Board of Education. Scarboro works eight hours a day, three days a week. Prior to that job, Scarboro worked as a meat bagger and trimmer for IBP, Inc.,

but was forced to quit after suffering several job-related injuries. The repetitive use of her hands caused uncontrollable swelling. A workers' compensation claim arising from these injuries is still pending.

In her lifetime, Scarboro has had seven surgeries, including the removal of her left kidney. None the ailments related to those surgeries, however, specifically impair her ability to work. Instead, Scarboro claims that her hands, her neck and her shoulders are impaired to a degree that she is disabled. Scarboro's hands swell, turn unusual colors and go numb on a daily basis. The KU Medical Center has diagnosed Scarboro's hand problems as stemming from Raynaud's Phenomenon; Scarboro continues to receive treatment from the KU Medical Center for her diseased hands. Scarboro also claims that her neck and shoulders burn.

Although Scarboro is generally able to take care of herself, she is unable to do housework. Scarboro testified that she is generally too fatigued to do anything beyond what is necessary to take care of herself. From her past work, Scarboro has acquired certain skills and knowledge in using a word processor, copying machines and fax machines.

Scarboro takes several prescribed medications: Paxell for depression, Procardia for the Raynaud's Phenomenon, and Ventolin for her lungs. Scarboro also takes Amitriptyline and Flexaril. Scarboro suffers from depression. Scarboro suffers from suicidal ideation. Scarboro "is always crying" and wanting to hurt herself, not wanting to live. Scarboro once tried to damage herself by wrecking a car, presumably one she was driving, on purpose. Scarboro once intentionally took an overdose of pills to injure herself. Scarboro was seeing a psychiatrist weekly but stopped

---

3. Actually, the Commissioner has filed a "Motion for an order Affirming the Commissioner's Decision and Response to Plaintiff's brief" (Dk. 8), apparently following D.Kan. Rule 503 which provides for the filing of "an appropriate dispositive motion and memorandum" for a social security appeal. In *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1579 n. 29 (10th Cir.1994), the Tenth Circuit disapproved this rule and the motion practice under it. The District of Kansas is in the process of changing D.Kan. Rule 503 to comply with the Tenth Circuit's holding in *Olenhouse* and to conform to Fed.R.App.P. 15.

For purposes of the present appeal, the court ascribes no legal significance to the Commissioner's dispositive motion. The court has simply treated the Commissioner's brief in support of her motion as a brief in support of her position. In deciding this appeal, the court will adhere to the well-established standard of review for social security appeals and rely solely upon the evidence found within the 300 page administrative record.

going when she was unable to afford additional treatments.

A vocational expert testified at the hearing. The ALJ asked the vocational expert if she could identify any jobs that a person of Scarboro's age and with her education, work-experience and restrictions on the repetitive use of her upper extremities or her hands could perform. None of the questions asked the vocational expert contained any reference to the existence of a mental impairment. The vocational expert opined that a person of Scarboro's age and with her education, work-experience and restrictions on the repetitive use of her upper extremities or her hands could perform several jobs in the national economy. Specifically, the vocational expert indicated that Scarboro could perform jobs such as security, delivery, telephone soliciting, information clerk, a limited number of cleaning jobs and general office positions— jobs that do not require constant movement or flexing of the fingers.

Based upon the evidence presented, the ALJ determined, *inter alia*, that:

1. Scarboro has engaged in work activity since the alleged onset date of her disability, but that such activity, while demonstrating a significant capacity to perform work activity, was not shown to be at the level of substantial gainful activity;

2. Scarboro's medical conditions physical or mental did not limit her physical or mental capacity to perform basic-related functions;

3. Scarboro's medical conditions did not meet or equal those listed in Appendix 1, Subpart P, Regulation Nos. 4 and 16;

4. Scarboro's medical conditions did not prevent her from returning to her past relevant work;

5. Scarboro retains the residual functional capacity to perform numerous jobs which do not involve repetitive use of hand or significant strength;

6. Scarboro is not and was not disabled as defined by the Titles II and XVI of the Social Security Act.

Administrative Record at 21–22.

## Standard of Review

The court reviews "the Secretary's decision to deny benefits to determine whether it is supported by substantial evidence and whether she applied the correct legal standards." *Cruse v. U.S. Dept. of Health & Human Services*, 49 F.3d 614, 616–617 (10th Cir.1995); see 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "Incorrect application or insufficient evidence of correct application of governing legal standards is grounds for reversal." *Cruse*, 49 F.3d at 617. See *Tibbits v. Shalala*, 883 F.Supp. 1492, 1493 (D.Kan.1995) (summarizing standard of review).

## Issues

Scarboro primarily advances two arguments in support of her contention that the Commissioner has erred: (1) That the ALJ's determination that the claimant's medical conditions do not meet or equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08 and 12.09 was contrary to the evidence; and (2) That the Commissioner's decision is not supported by substantial evidence.

## Analysis

1. **Is the Commissioner's determination that Scarboro's medical conditions do not meet or equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08 and 12.09 contrary to the evidence?**

Scarboro challenges the ALJ's determination that her medical conditions do not meet

or equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 (Affective Disorders), 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders). Scarboro specifically dedicates one paragraph of her fourteen page brief to analyzing this issue. Scarboro apparently argues that the evidence of her depression, suicide ideation and history of substance and alcohol abuse satisfies the criteria of one or more of these conditions. In response, the Commissioner argues that Scarboro has provided no argument or evidence, other than general allegations, to meet her burden. In short, the Commissioner contends that her decision is supported by the record.

In *Cruse,* the Tenth Circuit, in substantial detail, explained the procedure the Commissioner must use when there is evidence of a mental impairment that allegedly prevents a claimant from working. 49 F.3d at 617.

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir.1993). This procedure first requires the Secretary to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The Secretary must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. § 404.1520a(b)(3). To record her conclusions, the Secretary then prepares a standard document called a Psychiatric Review Technique Form (PRT form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. *See Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir.1988); 20 C.F.R. § 404.1520a(d). At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. *Id.*

49 F.3d at 617; see *Tibbits,* 883 F.Supp. at 1498–1501 (interpreting and applying *Cruse* ). Although *Cruse* was decided prior to the time either Scarboro or the Commissioner filed their respective briefs, neither party cites the case or attempts to analyze the issue within the relevant framework.

■ In any event, it appears that the ALJ adhered to the appropriate framework for evaluating claims of mental impairments and has reasonably concluded that there is insufficient evidence to support Scarboro's claim that her medical condition meets or equals in §§ 12.04, 12.08 and 12.09. The ALJ apparently completed the "Psychiatric Review Technique Form" and incorporated his findings into his decision; the completed Form is attached to the ALJ's opinion. The ALJ's findings are supported by substantial evidence. Scarboro's contention that she suffers a mental impairment is belied in part by the letters from the Kansas Board of Education which contain no indication that a mental impairment prevents her from performing her job in an appropriate manner.

**2. Is the Commissioner's decision supported by substantial evidence?**

Scarboro argues that the Commissioner's decision is contrary to the evidence contained in the administrative record. Scarboro contends that the medical evidence, coupled with the evidence concerning her work history, demonstrates that she is disabled. Scarboro also argues that the hypothetical questions asked of the vocational expert were deficient in that they failed to encompass all of the impairments established by the evidence. The Commissioner responds, arguing that her decision is supported by substantial evidence.

■ Under the appellate standards governing this court's review of the Commissioner's decision, the court is compelled to conclude that her decision is supported by substantial evidence. While it is clear that the medical condition of Scarboro's hands precludes her from performing jobs that require repetitive movements of her hands and upper extremities, it is equally clear that she is capable of performing a number of jobs available in the national economy that would not entail the use of her hands in a fashion that would exceed the medical limitations.

As to Scarboro's second argument, she is correct in arguing that "'testimony elicited by hypothetical questions [to a vocational expert] that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991) (quoting *Ekeland v. Bowen,* 899 F.2d 719, 724 (8th Cir. 1990)). However, the hypothetical questions posited to the vocational expert in the case at bar contained those exertional and nonexertional impairments the ALJ found credible. The ALJ considered the fact that Scarboro was diagnosed as suffering from depression, but discounted the impact of that condition based upon other evidence presented which demonstrated that her depression did not impact her ability to work. Consequently, the hypothetical questions asked by the ALJ of the vocational expert were not defective.

In sum, the Commissioner's decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that the Commissioner's motion to affirm (Dk. 8) is denied.

IT IS FURTHER ORDERED that the Commissioner's decision denying Scarboro's applications for disability benefits and for supplemental security benefits is affirmed.