**Flora M. SULLINS, Appellant,**

v.

**Donna E. SHALALA, Secretary of the Department of Health and Human Services, Appellee.**

No. 93–2729.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1994.

Decided May 18, 1994.

Rehearing and Suggestion for Rehearing en banc Denied June 23, 1994.

Anthony W. Bartels, Jonesboro, AR, for appellant.

Alicia E. Hernandez, Asst. Regional Counsel, Dallas, TX, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Flora Sullins applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) in November 1990, alleging disability due to a back injury, foot and female problems, and headaches. Her claims were denied initially and upon reconsideration. She requested and was granted a hearing before an Administrative Law Judge (ALJ), who denied her claim in a written report and recommendation on September 25, 1991. The Appeals Council sustained the ALJ's decision, and Sullins subsequently sought review of the denial of her claim in federal district court. The district court granted the Secretary's motion for summary judgment and dismissed Sullins' claim. Sullins appeals and we affirm.

I.

Sullins is a forty-two-year-old woman with a fifth grade education who has intermittently held a variety of jobs in the past. Her primary disability (back pain) is traceable to 1980 when, while working as a nurse's aide at a nursing home, she suffered a back injury when a 300–pound patient fell on her. She was treated at that time and was prescribed pain medication and muscle relaxants. From 1982 to 1985, she sought treatment from her family physician for recurring ailments apparently unrelated to her back injury. She received treatment three times thereafter before filing for disability on November 9, 1990—once in 1988 for a back injury and twice in 1990 for vaginal bleeding and weight control.

After filing for benefits and at the request of the Social Security office, Sullins saw Dr. James Smith in January 1991, at which time she complained of back pain, swelling in her feet, headaches, and chest pain. Based on the examination, Dr. Smith concluded that Sullins was capable of working in a number of occupations. Ad.Tr. at 136. She was examined for back pain again in April 1991 by Dr. Ramon Lopez, an orthopaedic specialist, who diagnosed her as having chronic lumbosacral strain.

Sullins' next comprehensive examination was by a psychiatrist, Dr. Gerald Fowler, on October 12, 1991—nearly a month after the ALJ issued his report and recommendation denying Sullins' disability benefits. Dr. Fowler found that Sullins suffered from a number of disabling mental impairments, many of which apparently were the result of past abusive relationships with her first two husbands. Among his findings were that

Sullins could not maintain adequate attendance for a low stress job due to her preoccupation with pain and her numerous somatic complaints, her post-traumatic stress disorder, and her several phobias and panic disorder. *Id.* at 168. Dr. Fowler concluded that Sullins' mental impairments had not improved significantly within the past twelve months and were not expected to improve within the next year. *Id.*

The ALJ found that Sullins had not been engaged in substantial gainful activity since February 15, 1990, and that she last met the special earnings requirements for disability benefits on June 30, 1990. Based on Sullins' testimony and medical record—with the exception of Dr. Fowler's psychiatric report which was issued too late to be considered—the ALJ found that, although Sullins was unable to perform her past relevant work [1] and had no transferable skills, considering her age, education, previous work experience, and residual functional capacity, she nonetheless could perform jobs that existed in significant numbers in the economy (*e.g.,* work as an assembly line worker or cashier). *Id.* at 22. Applying the factors set forth in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted), the ALJ concluded that Sullins' subjective complaints of pain were not credible and that there were no signs of an ongoing mental impairment. Ad.Tr. at 20, 22. The district court agreed, finding that there was substantial evidence on the record as a whole to support the ALJ's finding that Sullins was not disabled within the meaning of the Social Security Act.

## II.

■ Sullins urges reversal of the district court's order, arguing the evidence on the record as a whole was not substantial to support the ALJ's finding that her subjective complaints of pain were not credible. Alternatively, she urges us to remand the case with instructions to obtain vocational expert testimony that sheds light on her mental impairments (as described in Dr. Fowler's psychiatric report)—evidence that might well have, had it been timely introduced, estab-

lished that Sullins was in fact disabled. The facts of this case prevent us from doing either. The ALJ's findings as to both Sullins' allegations of pain and her mental impairments are sound.

■ We will affirm the district court's decision only if there is substantial evidence on the record as a whole to support the ALJ's findings. *See* 42 U.S.C. § 405(g); *Smith v. Heckler,* 735 F.2d 312, 315 (8th Cir.1984). When determining the credibility of a claimant's allegations of subjective pain, the ALJ must consider the claimant's prior work record, observations by third parties, and diagnoses by treating and examining physicians relating to such matters as (1) claimant's daily activities; (2) duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medications; and (5) functional restrictions. *Polaski,* 739 F.2d at 1322. Although an ALJ cannot disregard a claimant's subjective complaints of pain solely because the objective medical evidence does not fully support them, such complaints may be discounted if there are inconsistencies in the evidence as a whole. *See id.; Prince v. Bowen,* 894 F.2d 283, 286 (8th Cir.1990).

Sullins suffered an acute lumbosacral sprain in 1980 and 1988 as a result of a work-related injury as a nurse's aide for which she received pain medication. She sought treatment from 1982 to 1985 for a variety of problems, including osteoarthritis of the lumbar spine, rheumatoid arthritis, anemia, iron deficiency, and a corneal abrasion. The year of her alleged disability onset date, 1990, Sullins saw a physician only twice (once for vaginal bleeding and once for weight control), in spite of testifying to having "constant" back pain, with pain at ten, on a scale of ten, 99% of the time. Ad.Tr. at 40.

The only other visits that Sullins made to physicians occurred after she applied for disability benefits on November 9, 1990. In January 1991, she was examined by Dr. Smith at the request of the Social Security office. Dr. Smith reported that Sullins' lumbosacral spine showed "some minor early

---

1. Sullins had worked as a waitress, cook, nurse's aide, janitor, machine operator, and truck driver.

arthritic changes," however, nothing "other than ... minimal changes." *Id.* at 136. He found no evidence of a slipped disc or any compromise of intervertebral spaces, and found Sullins' feet to be within normal limits of a person of her age and stature. *Id.* Based on objective evidence, he concluded that Sullins was capable of working in a number of occupations, that she had no problem sitting (although she would be limited in the number of hours that she could stand), and that she was able to lift and carry objects of up to fifteen to twenty pounds. *Id.* At the behest of her attorney, Sullins saw Dr. Lopez in April 1991. Dr. Lopez reported that examination of Sullins' cervical spine showed no pain on compression or traction; that she was able to make a fist, pinch, grasp, and hold a pencil; that there was no demonstrable weakness in her hands; and that examination of her musculoskeletal system (*e.g.*, her shoulders, elbows, wrists, hips, knees, ankles, and feet) was "unremarkable with no areas of pain or tenderness." *Id.* at 139. Dr. Lopez concluded that she would not be able to do work activities that required prolonged sitting, standing, walking, climbing, carrying, pushing, or pulling. *Id.* Sullins sought additional treatment during this time from two other physicians, Drs. Grasse and Ducker, for back pain, headaches, and insomnia. *Id.* at 148–49, 151, 156.

Based on Sullins' medical record and testimony, the ALJ concluded that the severity of Sullins' allegations of pain were inconsistent with the level of medical evidence presented. *Id.* at 20. He found as well that her work history and daily living activities did not enhance her credibility. *Id.* We have carefully reviewed the record, and find that substantial evidence on the record as a whole supports the ALJ's decision. We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.

*Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992) (citing *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990)).

▪ As for Sullins' second contention, that the ALJ did not properly take into account her alleged mental impairments, we find that the ALJ did not err in failing to include a hypothetical question about her alleged mental impairments among the questions he asked of a vocational expert called to help determine the existence of other jobs in the economy that Sullins could perform. It is well settled that a hypothetical question posed to a vocational expert must fully set forth a claimant's impairments. *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir.1992). Sullins, however, presented no evidence to support her allegation that she suffered from a disabling mental impairment prior to June 30, 1990, the date she last met the special earnings requirements for disability benefits.[2] There are no signs or symptoms of an ongoing psychiatric impairment in any of her medical records, nor is there any showing that Sullins was diagnosed with or received treatment by either a mental health professional or one of her treating physicians for a psychiatric impairment. Sullins testified that she took Amitriptyline for her nerves, Ad.Tr. at 42; however, this medication was apparently prescribed for headaches. We find it noteworthy that she did not allege a disabling mental impairment in her application for disability benefits,[3] *see Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993), nor did she offer such an impairment as a basis for disability at her hearing,[4] *see Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir.1993).

The only medical evidence Sullins offered to support her claim of a disabling mental impairment was a consultative psychiatric report prepared by Dr. Fowler that arrived too late to be considered. Dr. Fowler examined

---

2. We note that Sullins was given ample opportunity at the hearing to raise the issue of her alleged mental impairments, but failed to do so. In concluding his questioning of the vocational expert, the ALJ specifically asked Sullins' attorney whether he had covered all of the factors relevant to Sullins' ability to perform other work. Neither Sullins nor her attorney raised the issue of mental impairments. *See* Ad.Tr. at 55–56.

3. In her application, Sullins alleged disability due to a back injury, female and foot problems, and headaches. Ad.Tr. at 62, 94, 120.

4. The only testimony she offered as to her mental health was that her "nerves" bother her and that she can get anxious and upset with people. Ad. Tr. at 42–43.

Sullins on October 12, 1991—nearly a month after the ALJ issued his report and recommendation denying her disability benefits. The report, to be sure, is rather compelling evidence that Sullins currently suffers from a number of mental impairments.[5] Due to the report's untimeliness, however, this information was not part of the medical record that formed the basis of the ALJ's decision.[6] An ALJ ordinarily has no obligation to investigate claims not presented at the time of the application for benefits and not offered at the hearing as a basis of disability. *See Smith,* 987 F.2d at 1375; *Brockman,* 987 F.2d at 1348.

We find, in sum, that there is substantial evidence on the record as a whole to support the ALJ's finding that Sullins' subjective complaints of pain were inconsistent with her medical record. We find as well that there is substantial evidence to support the ALJ's conclusion that Sullins did not suffer from a disabling mental impairment (or any other disability) prior to June 30, 1990, the date by which she needed to establish a disability in order to be entitled to benefits. We express no opinion, however, as to her eligibility for SSI benefits after June 30, 1990—an option that is not foreclosed by this opinion.

---

**5.** According to the report, Sullins' condition "had not improved significantly within the past 12 months and is not expected to improve significantly within the next 12 months." Ad.Tr. at 169.

**6.** Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), grants reviewing courts the authority to order the Secretary to consider additional evidence, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The evidence in Dr. Fowler's report is concededly material; however, we find that there was no good cause for Sullins' failure to incorporate it in the record. She had full opportunity to develop the record as to any mental impairments before the administrative record was closed, but failed to do so. *See Smith,* 987 F.2d at 1375.