Willard MORTON, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civil No. 94–3351–CV–S–4.

United States District Court,
W.D. Missouri,
Southern Division.

Sept. 16, 1996.

Larry O. Denny, Kansas City, MO, for plaintiff.

Jerry L. Short, Vernon A. Poschel, I, U.S. Attorney's Office, Kansas City, MO, for defendant.

### ORDER

FENNER, District Judge.

Plaintiff, Willard Morton, seeks judicial review of his application for social security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. Plaintiff's claim was denied initially and on reconsideration. Thereafter the appeals council of the Social Security Administration remanded for further proceedings. A supplemental hearing was held after which an Administrative Law Judge (ALJ) held that plaintiff was entitled to a closed period of "disability" commencing September 27, 1990, and ceasing November 1, 1992. The Appeals Council denied plaintiff's request for review of this determination. Plaintiff and defendant have each filed motions for summary judgment.

The issue before this court is whether there is substantial evidence on the record as a whole to support the Secretary's decision. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal. *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir.1991). Reversal is not appropriate even if the court, sitting as a finder of fact, would have reached a contrary result. *Jernigan v. Sullivan*, 948 F.2d 1070, 1073 n. 5 (8th Cir.1991); *Robertson v. Sullivan*, 925 F.2d 1124, 1127 (8th Cir.1991). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence and "if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision." *See Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir.1993); *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992).

In May of 1989, plaintiff sustained an injury to his back while lifting a drawer out of a file cabinet at work. Plaintiff claimed that his back injury and pain rendered him unable to engage in any substantial gainful activity. The ALJ found that although plaintiff's impairments precluded him from performing his former work as a maintenance worker, laborer/carpenter, and shoe cutter, they did not significantly compromise his ability to perform the full range of sedentary work after November 1, 1992.

The record reflects that on October 30, 1990, plaintiff was treated by Richard A. Marks, M.D., for back and neck pain which occasionally radiated to the left lower extremity and into the left testicular region. X-rays revealed cervical osteophytes at C5–C6, a possible thoracic vertebral compression fracture, decreased L1–L2 disc space, and "mild" thoracic scoliosis. A bone scan on October 31, 1990, showed a small area of increased activity at L1–L2. Multiple MRI studies showed "mild" wedging at T–8, "mild" posterior annular bulging at C3–C4 and C6–C7, and narrowing of the L1–L2 disc space. EMG and nerve conduction studies were within normal limits. Plaintiff was initially treated conservatively but on November 1, 1991, plaintiff underwent a discectomy at L4–L5 and bilateral fusion at L4–L5 and L5–S1.

Following his surgery, plaintiff saw Dr. Marks for a follow-up visit on February 6, 1992 and reported that the majority of the leg pain which he had had before the surgery had abated. However, he had begun to experience some low back pain and left hip pain. Dr. Marks believed that this pain was from the surgical incision and from pressure of the brace which plaintiff was wearing. X-rays showed "excellent appearance on all views."

On follow-up on April 2, 1992, plaintiff reported to Dr. Marks that he was experiencing "moderate" back pain with some numbness and pain in the left thigh. Dr. Marks noted that these complaints appeared to be "very gradually abating with time." X-rays showed "excellent appearance of the anterior grafts at L4–L5 and L5–S1."

On follow-up on May 14, 1992, plaintiff noted some continued tingling sensation in the left thigh and some aching in the right thigh which radiated into the right calf and foot. However, plaintiff noted that this was "significantly less severe" than it had been before the surgery. He complained of stiffness, aching, and pain in the back. X-rays were "strongly suggestive" of a solid fusion. Dr. Marks opined that the pain in the left lower extremity was due primarily to neural compression secondary to the brace plaintiff was wearing and a stretching of the ilioinguinal nerve at the time of the surgical incision. Dr. Marks opined that the pain in the right lower extremity was due to preoperative neural compression and he advised that the back stiffness and tightness could be helped by physical therapy. On follow-up on June 22, 1992, plaintiff reported continued leg pain, but also reported that the pain was less severe than it had been preoperatively. His back pain also appeared to be improving, which plaintiff believed was due in large part to physical therapy. X-rays showed "excellent fusion."

On follow-up on July 21, 1992, plaintiff reported that he continued to have back and leg pain but that the pain was "tolerable" and was less than it had been in the past. X-rays showed "excellent" fusion. Plaintiff also complained of epigastric burning. On follow-up on September 15, 1992, plaintiff reported improvement in his back and hip pain.

On follow-up on February 25, 1993, plaintiff reported continued improvement in his back and leg pain, but complained of continued aching in the right leg and foot and occasional sharp pain in the mid-lumbar region. Dr. Marks noted that plaintiff's pain was "intermittent and moderate rather than persistent and severe and is significantly better than his preoperative status." X-rays revealed "excellent" fusion at both levels. Plaintiff also complained of epigastric burning which was not relieved by Tagamet. Dr. Marks recommended esophageal gastroscopy to determine the cause of plaintiff's gastric distress.

Plaintiff underwent a consultative examination on March 25, 1993. He complained of "severe" neck and low back pain and sleep difficulties. R.A. Goldberg, M.D., reported that plaintiff's posture was stiff. His neck range of motion was limited in the left and right lateral head bend but showed normal flexion and extension. Sensation, motor strength, and reflexes in the upper extremities were symmetrical, except for some numbness in the thumbs. His back range of motion was ten to fifteen degrees in all directions due to complaints of pain. There was no paravertebral muscle spasm or asymmetry. Straight leg raising was positive at forty degrees. There was decreased sensation in the right leg from the knee to the ankle when compared to the left leg. The calves were equal with no atrophy or wasting. There was no obvious deformity in the ankles, knees, or hips. X-rays of the cervical spine were normal. X-rays of the lumbar spine showed stable anterior and posterior spinal fusions at L4–L5 and L5–S1. There was no significant disc space narrowing, infection, or ligamentous calcifications.

In his medical assessment of ability to do work-related activities (physical) dated March 25, 1993, Dr. Goldberg opined that plaintiff could lift ten pounds occasionally and five pounds frequently. He could stand/walk a total of three hours in an eight-hour day and for twenty minutes without interruption. He could sit for a total of three hours per day, thirty minutes without interruption. He should never climb, balance, stoop, crouch, kneel, or crawl.

Plaintiff alleged that he was unable to work because he had to take medication and he had to lie down during the day. He estimated that he could alternate between sitting and standing for forty minutes to one hour before he would need to lie down. Nonetheless, plaintiff drove himself four hundred seventy-five miles to the hearing herein. He stated that he drove for twenty-four hours straight and stopped every twenty to thirty minutes to stretch and to lie down in the back seat of the car. He had prescription pain medication but he did not take any medication while he was driving to the hearing or during the hearing. He estimated that his pain was a six or seven on a scale of one to ten with ten being the highest level of pain. He alleged that his pain was "like a toothache." Plaintiff testified that he was better since his surgery, but he did not believe that his condition had improved significantly.

A medical advisor, Dr. George Weilepp, testified that, in his opinion, plaintiff could occasionally lift ten to fifteen pounds and that he could frequently lift ten pounds. He could stand/walk a total of six to eight hours per day, forty-five minutes continuously. He could sit a total of three to four hours per day, thirty to forty-five minutes continuously. Dr. Weilepp further testified that, in his opinion, plaintiff met the requirements for a listed impairment under § 1.05 C of the regulations until November 1992, a year from the last surgery. After that date, Dr. Weilepp found a relative absence of objective findings of measurements and ranges of motion.

Based on hypothetical questions posed by the ALJ, a vocational expert testified that plaintiff would be able to perform jobs with a sit/stand option such as a dispatcher, a telephone order clerk, or various types of security jobs.

Plaintiff was hospitalized from May 13, 1993 to May 15, 1993, for evaluation of back pain. MRI, CT scan, and myelogram revealed no evidence of nerve root compression. There was a "mild" two millimeter bulge at L4–L5 with no significant narrowing. There was no disc herniation and no stenosis. There were degenerative changes at L1–L2 and at L2–L3. Neurological evaluation by Paul W. Hurd, M.D., revealed no atrophy of the lower extremities. Straight leg raising was negative bilaterally. Strength was intact in all major muscle groups in the lower extremities. His gait was normal. Dr. Hurd opined that plaintiff's back pain was probably mechanical in nature and he found no evidence of lumbar radiculopathy.

■ Plaintiff argues that the ALJ erred in applying the medical-vocational guidelines to find him not disabled because his back pain was a nonexertional impairment, thus precluding use of the medical-vocational guidelines. However, contrary to plaintiff's contention and pursuant to the regulations, plaintiff's back pain was properly characterized as an exertional impairment. The regulations provide that an exertional impairment refers to an impairment(s) and its related symptoms, such as pain, which manifests itself by affecting a claimant's ability to meet the strength demands of work (*i.e.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. § 404.1569a(b). Conversely, those limitations or restrictions which affect only the claimant's ability to meet the demands of work other than the strength demands are considered nonexertional. Examples of nonexertional limitations are nervousness, anxiety, or depression; difficulty maintaining attention or concentration; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating dust, fumes, or other physical features of a work setting; or difficulty reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. § 404.1569a(c).

■ Once a determination is made that a claimant cannot perform his or her past relevant work, the burden shifts to the Secretary to prove that there is work in the economy which plaintiff can perform. If an ALJ finds that a claimant has nonexertional impairments that affect his or her ability to do other work, then the ALJ cannot rely solely on the guidelines to determine whether the claimant is disabled and must receive other evidence, such as the testimony of a vocational expert. *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir.1994); *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir.1992); 20 C.F.R. § 404.1569a (1993). But if an ALJ finds that a claimant has either no nonexertional impairments or insignificant nonexertional impairments that do not limit his or her ability to perform other work, then the ALJ may properly rely on the guidelines. *Id.*

■ Plaintiff's back pain affected his ability to meet the strength demands of work, (sitting, standing, walking, lifting, carrying, pushing, and pulling), therefore, his back pain was an exertional impairment. Furthermore, there was testimony from a vocational expert in the case at bar who opined that there was sedentary work available in the state and national economy that plaintiff could engage in. The ALJ found that plaintiff had the residual functional capacity to perform the physical exertion requirements of work except for prolonged standing and walking or lifting and carrying more than ten pounds.

The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. *Hutsell v. Sullivan,* 892 F.2d 747, 750 (8th Cir.1989) (*citing Sykes v. Bowen,* 854 F.2d 284, 287 (8th Cir.1988) (per curiam)). "It is well established that a sufficient basis exists to discount subjective complaints of pain where the complaints are inconsistent with the record as a whole." *Id.*

At plaintiff's hearing, his attorney alleged that plaintiff suffered from headaches, vision problems, difficulty sleeping, gastric difficulties, urological problems, and drowsiness. Initially, it is significant that plaintiff did not allege disability due to any of these impairments in his application for disability benefits. *See Sullins v. Shalala,* 25 F.3d 601, 604 (8th Cir.1994); *Smith v. Shalala,* 987 F.2d

1371, 1375 (8th Cir.1993). In any event, there was no evidence to show that plaintiff was ever treated for headaches or vision problems or that he ever complained of these problems to his doctor. Furthermore, plaintiff alleged that his medication caused drowsiness, however, there was no evidence that he ever reported this to his doctors. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir. 1994); *Richmond v. Shalala,* 23 F.3d 1441, 1443 (8th Cir.1994). Although he spoke to his doctors about gastric difficulties and urological problems, he testified that he has not received treatment for these complaints. There is no evidence that these problems have a significant effect on plaintiff's ability to work. In addition, plaintiff testified that he needed to lie down several times during the day, but there is no medical evidence to show that any doctor recommended that plaintiff needed to recline during the day. It is reasonable to conclude that plaintiff merely *chose* to lie down, not that it was a necessity. *See Schroder v. Sullivan,* 796 F.Supp. 1265, 1270 (W.D.Mo.1992).

As the ALJ noted in his decision, the objective medical findings indicated that plaintiff's condition improved after his surgery in November 1991. X-rays taken after the surgery consistently showed "excellent" fusion. Although plaintiff continued to report back pain, in July 1992 he indicated that the pain was "tolerable and somewhat less" than it had been before the surgery. In February 1993, Dr. Marks noted that plaintiff's pain was "intermittent and moderate rather than persistent and severe and is significantly better than his preoperative status." Following the hearing, plaintiff was hospitalized for evaluation of back pain, however, there was no evidence of disc herniation, spinal stenosis, or lumbar radiculopathy. Dr. Hurd opined that plaintiff's back pain was mechanical in nature. Straight leg raising was negative bilaterally. There was no atrophy, his strength was intact in the lower extremities, his gait was normal, and he had normal deep tendon reflexes. The objective medical evidence suggests that plaintiff's impairment improved after his back surgery in November 1991.

The ALJ noted that plaintiff alleged disabling back pain, yet he was able to drive four hundred seventy-five miles without stopping overnight and without taking any medication. Nor was he taking any medication at the time of the hearing. Even without medication, he described his pain as comparable to a toothache. Furthermore, he described his pain after the surgery as "intermittent and moderate" rather than "persistent and severe."

There was sufficient basis under the record as a whole to discount plaintiff's subjective complaints of pain given the inconsistencies in the record as discussed herein. Furthermore, substantial evidence on the record as a whole supports the Secretary's decision. Accordingly, it is ORDERED that the defendant's Motion for Summary Judgment is GRANTED and the plaintiff's Motion for Summary Judgment is DENIED.